**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| DWAYNE TREECE, PHALLON TREECE, and CLIFFORD HARLAN<br><br>Plaintiffs<br>V.<br><br>PERRIER CONDOMINIUM OWNERS ASSOCIATION, INC., KATHERINE E. ACUFF, HANNA M. HAILE, and CHRISTOPHER J. JABLONOWSKI<br><br>Defendants. | No. 17-cv-10153<br>Judge Susie Morgan, Presiding<br>Magistrate Judge Daniel E. Knowles III |

**FIRST AMENDED COMPLAINT**

Plaintiffs, Clifford Harlan ("Harlan"), Dwayne Treece ("Dwayne") and Phallon Treece ("Phallon"), bring this action for declaratory and injunctive relief and damages against Defendants for violations of federal civil rights law. In support of their claims, Plaintiffs respectfully aver:

## I. NATURE OF ACTION

1.

In August 2017, Plaintiff Clifford Harlan rented his three-bedroom condominium unit to Dwayne and Phallon Treece, graduate students with four young children. Shortly after the family moved in, Defendant members of the Perrier Condominium Association began complaining about the presence of children on the property and pressuring Plaintiff Harlan to commence eviction proceedings against his tenants.

2.

Since then, Defendants have taken coercive measures to interfere with Plaintiffs Dwayne and Phallon's right to occupy the unit free from discrimination on the basis of their familial

status. Defendants intimated Dwayne and Phallon by installing a video camera pointed at their front door and by recording sounds emanating from their unit. At the same time, Defendants pressured Harlan to enforce the Association's unreasonable occupancy policy, which is more restrictive than the occupancy limits found in the applicable City code, and which, in purpose and in effect, prevents Plaintiffs and other families with children from living in the dwelling. Defendants ultimately voted to fine Harlan one-hundred dollars per day for every day that the Treece family remains in the Unit and have placed a lien on Harlan's property for the fines.

3.

Defendants' actions constitute unlawful housing discrimination in violation of the Fair Housing Act.

## II. PARTIES

4.

Plaintiffs, Dwayne and Phallon Treece, are both competent persons of the full age of majority residing in New Orleans, LA.

5.

Plaintiff, Clifford Harlan, is a competent person of the full age of majority residing in New Orleans, LA.

6.

Defendant, Perrier Condominium Owners Association, Inc. (the "Association"), is a corporation organized and existing under the laws of the state of Louisiana with its principal place of business in Louisiana.

7.

Defendant, Katherine E. Acuff ("Acuff"), is a competent person of the full age of majority residing in New Orleans, LA.

8.

Defendant, Christopher J. Jablonowski ("Jablonowski"), is a competent person of the full age of majority.

9.

Defendant, Hanna M. Haile ("Haile"), is a competent person of the full age of majority.

## III. JURISDICTION AND VENUE

10.

Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 because this action involves a federal question, 42 U.S.C. § 3613(a)(1) because this action invokes the Fair Housing Act, 28 U.S.C. § 1343(a) because this action involves civil rights issues.

11.

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of the property that is the subject of the action is situated in, New Orleans, Louisiana.

## IV. STATEMENT OF FACTS

12.

Perrier Street Condominiums consists of four condominium units created by Act of Declaration Creating and Establishing Condominium Regime for Perrier Street Condominiums dated September 7, 2004.

13.

Harlan is the owner of the Unit located at 6036 Perrier Street, New Orleans, LA.

14.

Acuff is the owner of the Unit located at 6034 Perrier Street, New Orleans, LA.

15.

Jablonowski is the owner of the Unit located at 6032 Perrier Street, New Orleans, LA.

16.

Haile is the owner of the Unit located at 6038 Perrier Street, New Orleans, LA.

17.

Pursuant to the powers and authority granted in the Act of Declaration, the Association is the governing body for all of the Unit Owners and is responsible for the administration and operation of the Perrier Street Condominiums. The Association is a non-profit corporation, and its members are all of the Unit Owners.

18.

The Association is managed by a Board of Directors consisting of four members, namely Harlan, Acuff, Jablonowski, and Haile.

19.

Plaintiff Dwayne Treece is a third-year student at Tulane Law School, scheduled to graduate in May 2018. His wife, Phallon Treece, is a graduate student who volunteers with the Tulane Disaster Resilience Leadership Academy.

20.

In May 2017, Dwayne sought a place to rent for his third year of law school (from August 2017 to May 2018) for his wife, Phallon, and their four children, ages seven, five, three, and one.

21.

In May 2017, Dwayne contacted Haile about renting her Unit at 6038 Perrier Street, New Orleans, LA.

22.

Dwayne thought the location was ideal because it was close to Tulane and their children's school, Lycée Français de la Nouvelle-Orléans.

23.

Haile refused to rent her Unit to Dwayne and his family because she believed, mistakenly, that "they have 3 small children."

24.

After Haile refused to rent to them, Dwayne and Phallon suspended their apartment search. They moved to Washington D.C. for the summer, where Dwayne had a summer clerkship with a law firm there.

25.

In August 2017, the family returned from Washington D.C. and temporarily stayed with Phallon's family in Biloxi, MS, while they renewed their search for an apartment near Tulane for the school year.

26.

On August 15, 2017, Dwayne viewed an advertisement for a spacious, 1,372 square foot, three-bedroom Unit located at 6036 Perrier Street in New Orleans, Louisiana (the "Property") and owned by Plaintiff Harlan. The Property was in the same condominium building as Haile's, and equally ideally located.

27.

After viewing the Property and discussing renting it with Plaintiff Harlan, Dwayne and Phallon tendered to Harlan, and Harlan accepted, a security deposit of $1,800.00. The parties did not discuss the number of children who would be living in the Property.

28.

On August 14, 2017, pursuant to Harlan's instructions, Phallon filled out an online application. The application did not ask for the number of people who would be residing in the Property.

29.

On August 16, 2017, Harlan approved the application. That same day, Harlan and Dwayne met at an agreed upon time to review and execute a lease.

30.

On August 16, 2017, Harlan and Dwayne each completed and signed two copies of the Lease agreement. Harlan reviewed each point of the Lease agreement with Dwayne. At all times during this meeting, Dwayne's two oldest children, ages five and seven, were present.

31.

No children were named in either copy of the lease.

32.

At no time during the meeting did Harlan indicate that children should be included on the lease.

33.

After reviewing and signing the lease, Harlan gave the keys to Dwayne, who then took possession of the Property from Harlan.

34.

On or about August 16, 2017, the Treeces began moving their belongings into the Property. They ordered a couch and a baby crib. Dwayne made arrangements for electricity, cable and internet service.

35.

By e-mail dated August 16, 2017, Harlan informed the Unit Owners and members of the Association's Board of Directors, namely Acuff, Jablonowski, and Haile, that Harlan had rented the Property to Dwayne and Phallon.

36.

Acuff, whose Unit abuts the Property, responded by e-mail inquiring about the number of children that would be residing in the Property. She complained, "they are moving in as I write this and I am listening to a kid screaming through the wall and running all over the floors."

37.

Haile responded, informing Acuff, Harlan and Jablonowski that Dwayne had contacted her previously about renting her unit. She stated "He is a nice guy but I decided it was not the best fit as they have 3 small children."

38.

Upon discovering that Dwayne and Phallon had four children, Acuff, Jablonowski, and Haile began taking actions to coerce Harlan to evict Dwayne and Phallon and their children on the basis of their familial status.

40.

Acuff, who has a law degree, suggested various bases on which Harlan could seek to terminate Dwayne and Phallon's lease, including for violating prohibitions on noise, for not listing the names of their children on the Lease, and for exceeded the occupancy limitation in the Association's Rules and Regulations.

41.

In response to the coercion of Acuff, Jablonowski, and Haile, Harlan informed Dwayne and his family they would have to move out of the Property because the number of members of

their family exceeded the Association's occupancy limitation.

42.

On August 22, 2017, Harlan delivered to Dwayne and Phallon a "Five (5) Day Notice to Vacate Premises" terminating their tenancy on the grounds the number of occupants exceeded the Association's occupancy limitation. He appended the limitation, which then stated, "The Units are also restricted to occupancy by no more than one (1) person per two hundred fifty (250) square feet of Unit floor space" (hereinafter referred to as the "two-hundred-fifty square feet policy").

43.

Dissatisfied with the continued presence of Dwayne, Phallon, and their four children at the Property, Acuff called a meeting of the Unit Owners to discuss the status of the tenants, amendments to the Association's occupancy restrictions, and a proposal to have the condominium documents reviewed and updated by an attorney.

44.

In the evening of August 22, 2017, the Unit Owners met. All Unit Owners were in attendance. By a vote of three in favor and one (Harlan) against, the Unit Owners voted to change the occupancy restriction to be more restrictive. The new restriction read, "The Units are also restricted to occupancy by no more than one (1) person per **<u>FOUR HUNDRED (400)</u>** square feet of Unit floor space" (hereinafter referred to as the "four-hundred square feet policy").

45.

In response to the Five (5) Day Notice to Vacate Premises, Dwayne informed Harlan the occupancy limitation and the threatened action to evict Dwayne and Phallon and their family violated the Fair Housing Act.

46.

Upon learning the occupancy restriction and any efforts to enforce the unlawful restriction violated the Fair Housing Act, Harlan has halted his efforts to evict Dwayne and Phallon and their family without prejudice to pursue eviction at a later point.

47.

Dissatisfied with Harlan's failure to evict his tenants from his Unit, the Unit Owners held a special meeting on September 29, 2017. Acuff, Harlan, and Haile attended in person. Jablanowski appointed Acuff as his proxy vote.

48.

By a vote of three to one, with Harlan voting against, the Unit Owners resolved to impose a fine of $100 per day against Harlan beginning Monday, October 2, 2017 for his continued lease of his Unit to Dwayne and Phallon and their family.

49.

At the meeting, by a vote of three to one, with Harlan voting against, the Unit Owners resolved to pursue a potential eviction of Dwayne and Phallon as tenants of Harlan.

50.

At the meeting, by a vote of three to one vote, with Harlan voting against, the Unit Owners resolved to assess legal fees associated with such an eviction against Harlan if the eviction were successful and against all Unit Owners if the eviction were unsuccessful.

51.

At the meeting, by a vote of three to one, with Harlan voting against, the Unit Owners resolved to retain the professional services of an attorney to represent the Association.

52.

At the meeting, by a vote of three to one, with Harlan voting against, the Unit Owners resolved to install a camera in the stairwell pointed at the Treece's door.

53.

Subsequent to the September 29 meeting, Defendant Acuff installed a device to record conversations and sounds emanating from the Treece's unit.

54.

On January 24, 2018, Acuff, acting in her capacity as Treasurer of the Association, filed a lien on Harlan's Unit 6036 for unpaid fines relating to the Treeces' continued occupancy.

55.

In March 2018, Acuff installed a camera at the top of the stairs in the building. The camera is pointed directly at the door to the property inhabited by the Treeces.

56.

Acuff and the Association's actions have interfered with Dwayne and Phallon's right to use and enjoy the property free from discrimination on the basis of familial status.

57.

The occupancy standards enacted by the Association have the intent and effect of restricting families with children.

58.

The Property is spacious and comfortably fits the Treece family. It was advertised in August 2017 as follows:

> **Approx 1,309 sqft**
>
> . . . .
>
> **2 large bedrooms** are located downstairs w/closet space. Kitchen includes granite counters, stainless appls., breakfast bar & a gas range. **Bonus room upstairs may serve**

> **as a 3rd bedroom**/office. W/D in the unit. Common backyard & storage. The private 3rd floor deck is waiting for you to relax.

59.

The master bedroom measures approximately 175 square feet. The second bedroom measures 204 square feet. A third floor bonus/bedroom measures 443 square feet. The open concept combined living room and dining room measures 261 square feet. The apartment does not have a separate dining room. The kitchen is 141 square feet. The laundry/ stairwell is 43 square feet. The bathroom is 44 square feet.

60.

The two-hundred-fifty square feet occupancy standard adopted and enforced by Defendants in effect in August 2017, when the Treece's moved into the property, actually and predictably results in a disproportionate impact on families with children. As adopted and enforced by Defendants, the standard is intended to and has the effect of denying housing for families with children.

61.

As a result of the two-hundred-fifty square feet occupancy standard originally adopted and enforced by Defendants, only five (5) people may occupy the three-bedroom Unit without regard to the size of the Unit, the configuration of the Unit, the size of the bedrooms, the number of the bedrooms, or the ages of the children.

62.

According to the U.S. Census Bureau's American Community Survey 2015 Population Estimates, the estimated number of households in New Orleans comprising over five (six or more) people is 2,640. Of those households, 2,640, or 100%, are identified by the U.S. Census Bureau as family households.

63.

The act of adopting and promulgating the four-hundred square feet occupancy restriction on August 22 was done with the purpose of restricting families with children from moving into the Condominium building. Furthermore, the four-hundred square feet occupancy restriction actually and predictably results in a disproportionate impact on families with children. As adopted and enforced by Defendants, the standard is intended to and has the effect of denying housing for families with children.

64.

As a result of the four-hundred square feet occupancy limitation adopted by amendment on August 22, 2017, only three (3) people may occupy the three-bedroom Unit without regard to the size of the Unit, the size of the bedrooms, the number of the bedrooms, or the ages of the children.

65.

According to the U.S. Census Bureau's American Community Survey 2015 Population Estimates, the estimated number of households in New Orleans comprising over three (four or more) people is 12,267. Of those households, 11,898, or 97%, are identified by the U.S. Census Bureau as family households.

66.

Both the two-hundred-fifty square feet occupancy restriction and the four-hundred square feet occupancy restriction adopted and enforced by Defendant are more restrictive than the local occupancy code applicable to residential units in New Orleans, Louisiana.

67.

Sec. 26-197 of the Comprehensive Code of Local Ordinances of the City of New Orleans (hereinafter "City Code" or "New Orleans City Code") provides, in relevant part:

Every bedroom and living room shall comply with the following requirements:

(1) Every living room shall contain at least 120 square feet and every bedroom shall contain a minimum of 70 square feet, and every bedroom occupied by more than one person shall contain a minimum of 50 square feet of floor area for each occupant thereof.

(2) Bedrooms shall comply with the applicable provisions of this code including, but not limited to, the light, ventilation, room area, ceiling height and room width requirements of this article.

Sec. 26-199 of the City Code further provides, in relevant part:

(a) Dwelling units shall not be occupied by more occupants than permitted by the minimum area requirements established in the table below:

| Space | 1—2 occupants | 3—5 occupants | 6 or more occupants |
|---|---|---|---|
| Living room | 120 | 120 | 150 |
| Dining room | No requirement | 80 | 100 |
| Bedrooms | Comply with section 26-197 | | |

68.

The occupancy standard adopted and enforced by Defendants is unreasonable and does not have a substantial, legitimate nondiscriminatory objective. Even if Defendants utilized the occupancy standard for a substantial, legitimate purpose, other, less discriminatory alternatives are available to Defendants to achieve any such objective.

69.

Defendants' actions were and are intentional, willful, reckless and in complete disregard of Plaintiffs' federal rights. As participants in the real estate rental business, Defendants are aware of the federal law as it pertains to housing discrimination.

## V. CAUSES OF ACTION

**Fair Housing Act**
**(42 U.S.C. § 3601, *et seq*., and 24 CFR 100.1, *et seq*)**

70.

Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs.

71.

Each Plaintiff is an "aggrieved person" as defined by 42 U.S.C. § 3602(i), (k).

72.

6036 Perrier Street, New Orleans, LA is a dwelling covered by the Fair Housing, Act 42 U.S.C. 3602(b), and subject to no exception under 42 U.S.C. 3603(b).

73.

By the actions set forth above, Haile has discriminated against Dwayne and Phallon Treece by printing and publishing statements with respect to the sale or rental of Units within the Perrier Street Condominiums that indicate a preference or limitation on the basis of familial status, in violation of the Fair Housing Act, 42 U.S.C. § 3604(c).

74.

By the actions set forth above, Haile has discriminated against Dwayne and Phallon Treece by refusing to rent her Unit to them or by otherwise making unavailable or denying that Unit because of their familial status, in violation of the Fair Housing Act, 42 U.S.C. § 3604(a).

75.

By the actions set forth above, Haile has discriminated against Dwayne and Phallon Treece by representing to them that Haile's Unit was not available for rental when such dwelling was in fact so available because of their familial status in violation of the Fair Housing Act, 42 U.S.C. § 3604(d).

76.

By the actions set forth above, Haile, Acuff, Jablonsky, and the Association have discriminated against Plaintiffs by printing and publishing statements with respect to the sale or rental of Units within the Perrier Street Condominiums that indicates an occupancy limitation or discrimination on the basis of familial status in violation of the Fair Housing Act, 42 U.S.C. § 3604(c).

77.

By the actions set forth above, Haile, Acuff, Jablonsky, and the Association have discriminated against Plaintiffs Harlan, Dwayne, and Phallon by adopting occupancy limitations that have the intent and effect of making unavailable or denying housing to families with children in violation of the Fair Housing Act, 42 U.S.C. § 3604(a) and implementing regulations, 24 C.F.R. § 100.500.

78.

By the above actions, Defendants have unlawfully coerced, intimidated, threatened, or interfered with Harlan, Dwayne, and Phallon in the exercise of, or an account of their having exercised or enjoyed, their rights granted or protected by the Fair Housing Act, 42 U.S.C. § 3604 on the basis of familial status, in violation of the Fair Housing Act, 42 U.S.C. § 3617, and implementing regulations 24. C.F.R. § 100.400.

79.

By the actions set forth above, Defendants have discriminated against Harlan by refusing to allow him to sell his Unit by discriminating against prospective buyers of Harlan's Unit and have printed or published their decision or statements with respect to the sale or rental of Harlan's Unit that indicates an occupancy limitation that discriminates on the basis of familial status, all in violation of the Fair Housing Act, 42 U.S.C. § 3604(a) (b) and (c).

80.

As a result of the conduct or actions of Defendants, Dwayne and Phallon suffered damages, economic loss, inconvenience, and emotional distress.

81.

As a result of threated conduct or actions of Defendants, Dwayne and Phallon will suffer additional damages including economic loss, inconvenience, emotional distress, and lost housing opportunity.

82.

As a result of the conduct or actions of Defendants, Harlan suffered damages, economic loss, inconvenience, damage to reputation, diminished value to his Unit, loss of prospective purchasers of his Unit, and emotional distress.

83.

As a result of threated conduct or actions of Defendants, Harlan will suffer additional damages including economic loss, inconvenience, damage to reputation, diminished value to his Unit, and emotional distress.

84.

Pursuant to 42 U.S.C. § 3613(c), Plaintiffs are entitled to their reasonable attorney's fees and costs and actual and punitive damages.

85.

Pursuant 42 U.S.C. § 3613(c)(1), Harlan is entitled to a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining Defendants from enforcing the unlawful occupancy restrictions, assessing or collecting any fines for alleged violations of the unlawful occupancy restriction, and collecting fines for any violations arising or anyway connected with the leasing of his Unit to Dwayne and Phallon.

86.

Pursuant 42 U.S.C. § 3613(c)(1), Dwayne and Phallon are entitled to a preliminary injunction and a permanent injunction enjoining Defendants from taking any action to enforce the Association's unlawful occupancy restrictions as it relates to their tenancy, to terminate the Treece's tenancy on the basis of their familial status, or to coerce Harlan to terminate their tenancy on the basis of their familial status or the Association's unlawful occupancy restrictions.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court enter an Order and Judgment against Defendants that:

A. Declares that Defendants the Association, Katie E. Acuff, Hanna Haile, and Chris Jablonowski, and their discriminatory practices, as set forth above, violate the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, pursuant to 28 U.S.C. § 2201;

B. Enjoins Defendants the Association, Katie E. Acuff, Hanna Haile, and Chris Jablonowski, their agents, employees, successors, and all other persons in active concert or participation with them from discriminating on the basis of familial status, in violation of the Fair Housing Act;

C. Enjoins Defendants the Association, Katie E. Acuff, Hanna Haile, and Chris Jablonowski, their agents, employees, successors and all other person in active concert or participation with them from taking any action in violation of their obligations under the lease agreement;

D. Enjoins Defendant the Association, Katie E. Acuff, Hanna Haile, and Chris Jablonowski, their agents, employees, successors and all other person in active concert or participation with them, from taking any act to enforce its two-hundred-fifty square foot and four-hundred square foot occupancy restrictions, which have an unlawful discriminatory impact

on families with children;

E. Enjoins Defendant the Association, Katie E. Acuff, Hanna Haile, and Chris Jablonowski, their agents, employees, successors and all other person in active concert or participation with them, from taking any act to coerce Harlan to enforce the two-hundred-fifty square foot or four-hundred square foot occupancy restriction, or take an any action to evict the Treeces;

F. Enjoins Defendant the Association, Katie E. Acuff, Hanna Haile, and Chris Jablonowski, their agents, employees, successors and all other person in active concert or participation with them, from taking any taking any action intended to interfere with the Treeces' peaceful use and enjoyment of the property;

G. Awards compensatory damages to Plaintiffs;

H. Awards punitive damages to Plaintiffs;

I. Awards Plaintiffs reasonable attorneys' fees, costs and expenses incurred in prosecuting this action; and

J. Grants such other further relief as the interests of justice may require.

## VII. JURY DEMAND

Plaintiffs hereby request a trial on the merits by jury, pursuant to Fed. R. Civ. P. 38.

DATED: April 30, 2018

Respectfully submitted,

/s/ *John Adcock*__________
John N. Adcock, La. Bar No. 30372
Law Office of John N. Adcock
3110 Canal Street, 2d Floor
New Orleans, La. 70119
Email: Jnadcock@gmail.com
T: (504) 708-5291
F: (504) 308-1266
*Attorney for Dwayne and Phallon Treece*

/s/ *Elizabeth Owen*__________
Elizabeth Owen
La. Bar No. 33620
GREATER NEW ORLEANS FAIR HOUSING
ACTION CENTER
404 S. Jefferson Davis Pkwy
New Orleans, La. 70119
Email: eowen@gnofairhousing.org
T: (504) 708-5291
F: (504) 308-1266
*Attorney for Dwayne and Phallon Treece*

*/s/ Pierre V. Miller II*___________
Pierre V. Miller II (17712)
Patrick Miller LLC
400 Poydras Street, Ste. 1680
New Orleans, Louisiana 70130
Telephone: (504) 527-5400
Facsimile: (504) 527-5456
E-mail: pmiller@patrickmillerlaw.com
*Attorney for Clifford Harlan*