UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DWAYNE TREECE, et al., | * | |
| | * | Case No.  17-cv-10153 |
| Plaintiffs | * | |
| v. | * | SECT. E       MAG. 3 |
| | * | |
| PERRIER CONDOMINIUM OWNERS | * | MORGAN/DOUGLAS |
| ASSOCIATION, INC., et al., | * | |
| | * | |
| Defendants. | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

## OPPOSITION TO PLAINTIFFS' FIRST AND SECOND MOTIONS TO COMPEL

Defendants Perrier Condominium Owners Association, Inc., Katie Acuff, Christopher Jablonowski and Hanna Haile ("Defendants"), through their undersigned counsel, hereby oppose the plaintiffs' first and second motion to compel as follows:

### I.      Relevant Factual and Procedural Background

On August 16, 2017, the plaintiffs Dwayne and Phallon Treece moved into a unit of the Perrier Condominium in New Orleans, which they rented from co-plaintiff, and former defendant, Clifford T. Harlan.  The Condominium is governed by the Perrier Condominium Owners' Association (PCOA), which is a registered corporation with the Louisiana Secretary of State.  It is comprised of a 117-year old house that was converted to four condominium units in 2004.  There are two units of about 800 square feet downstairs and two upstairs units.  The attic has been converted into two loft areas, one for each of the upstairs units, making those units slightly larger.  Defendants Chris Jablonowski and Hanna Haile own the two downstairs units, while Defendant Katie Acuff and Plaintiff Harlan own the upstairs units.  Certain parts of the sewerage and plumbing are original and the partition walls between the units and the floors are not sound proofed in any way.

4827-9998-6058.4

Like all condominiums in Louisiana, the Perrier Condominium is governed by its Declaration, By-Laws and Rules and Regulations (herein "the condo governing documents"). LA. REV. STAT. 9:1122.101, *et seq.*   Among other things, the condo governing documents contain a completely neutral occupancy limit of 250 square feet per person. (Doc. 53-9, #1, #3). This limit has been in place since the inception of the condominium regime. (*Id.* at #2).  When the plaintiffs signed the lease with Harlan in 2017, they admittedly did not disclose how many people would be occupying the unit.  Indeed, the Treeces misrepresented on the lease that they would be the only occupants. (Ex. 5, lease excerpt).  The plaintiffs' occupancy of the unit with six people violated the limit, because the unit was less than 1500 square feet needed under the rule.

When Harlan served the plaintiffs with a notice to vacate on August 22, 2017, Mr. Treece, a Tulane Law School student at that time, rushed to one of its clinics and enlisted the aid of Stacy Seicshnaydre, who contacted Harlan on August 24, 2017, about possible violations of the Fair Housing Act. (Ex. 6, Email, PCOA-00031-EMAIL).  Harlan suspended any and all attempts to evict the plaintiffs, while working with his co-members of the PCOA to respond to the claims of discrimination.  During this time, the co-members made complaints to Harlan of excessive noise emanating from his unit, which violated the Condominium governing documents. (Doc. 53-9, #10).  The noise was so severe that Ms. Acuff took sleeping pills and extra out-of-town travel assignments from work, Ms. Haile could not rent her condo, and Mr. Jablonowski spent more time in Houston than New Orleans, despite the flood damage in Houston. (Doc. 53-3, #5; Doc. 53-5, #3; Doc. 53-7, #6).

Ultimately, despite the fact that no eviction was imminent, the Treeces filed suit on October 4, 2017 against Harlan. (Doc. 2).  In April 2018, Harlan indicated the plaintiffs would

file suit against the PCOA and its other members. (Ex. 8, Email).   On April 30, 2018, the plaintiffs and Harlan moved to dismiss Harlan as a defendant and add him as a plaintiff, as well as amend the Complaint to add as defendants the PCOA, Ms. Acuff, Ms. Haile and Mr. Jablonowski. (Doc. 14).   They alleged that the Defendants discriminated against them based on their familial status. (*Id.*).   They also alleged that Ms. Haile improperly refused to rent to them, even though they never submitted an application to rent her condo. (*Id.*; Doc. 53-5, #4).   The plaintiffs remained in Harlan's unit until Mr. Treece graduated law school and could relocate to Washington, D.C., as planned the entire school year. (Doc. 14-1, Acuff Declaration).[1]

In July 2018, the Defendants filed a motion to dismiss the suit, which was granted in part and denied in part.   The Court determined that certain claims were moot, but held that plaintiff Harlan had standing to challenge certain actions, since he is the owner of one of the condo units. (Doc. 41).   In December 2018, the plaintiffs issued Interrogatories and Requests for Production to the Defendants.   They served each of the four defendants with separate and independent sets of discovery. (Ex. 1, Declaration of K. Dicke, ¶3; Doc. 53-4, p.2).   They were not exact duplicates of the same discovery. (*Id.*).   They consisted of 56 separate interrogatories and 98 requests for production. (Doc. 53-3 to 53-10).   The Defendants had already been gathering documents, including emails, relevant to this case. (Ex. 1, Declaration of K. Dicke, ¶3).   Because of the volume and the Christmas and New Year's holidays, the review and preparation of responses and documents was delayed. (*Id.*).   On January 4, 2019, counsel for the plaintiffs, Elizabeth Owen, and undersigned counsel agreed to a two-week extension, which undersigned counsel reasonably believed would be sufficient to complete the work. (*Id.* at ¶4).

---

[1] Mr. Treece clerked the summer of 2017 for Wiley Rein, LLP in D.C. and accepted an associate position in the fall of 2017 to begin after his graduation in 2018.

Unfortunately, because computer technical issues, the work to prepare, compile and review the document production was delayed. (*Id.* at ¶5; Doc. 51-3, p.2).  On January 22, 2019, the day after Martin Luther King, Jr. Day, plaintiffs were advised through their attorney that the production would be delayed until the following week, because counsel would not be able to finish the task until after a trial on January 24 and 25, 2019 in state court on another matter. (Ex. 1, Declaration of K. Dicke, ¶5; Doc. 53-1, p.2).  On January 29, 2019, counsel for the parties conferred by phone. (Doc. 51-3, p.1).  At that time, plaintiffs' counsel indicated she wanted the discovery responses and documents no later than Thursday, January 31, 2019. (*Id.*; Ex. 1, Declaration of K. Dicke, ¶6).  Defense counsel explained that the documents and discovery responses would definitely be done by Friday, February 1, 2019, but that it *might* be done by Thursday, January 31, as plaintiffs wanted. (Ex. 1, Declaration of K. Dicke, ¶6).  Defense counsel committed to attempt to complete the production by January 31 but emphasized the response would definitely be completed by February 1. (*Id.*).

On January 31, 2019, defense counsel advised plaintiffs' counsel that the production would not be completed by close of business but could be done that day. (Doc. 51-3, p.1). Unfortunately, because of the volume of documents and the amount of detail in the documents, the thorough, good-faith review of the documents for responsiveness, relevance, privilege and discoverability took much longer than anticipated. (Ex. 1, Declaration of K. Dicke, ¶¶7-9). Defense counsel worked until 3:00 a.m. on February 1, 2019, in an attempt to complete the work immediately. (Ex. 1, Declaration of K. Dicke, ¶9; Ex. 2, Email).  Unfortunately, defense counsel had a court hearing at 9:00 a.m. and therefore had to sleep. (*Id.*).  Defense counsel emailed plaintiffs' counsel and advised of the situation. (*Id.* at ¶9; Ex. 2).  At 10:54 a.m., plaintiffs filed the first motion to compel, despite the representation of defense counsel. (Ex. 3, notice).  After

completing the hearing at Civil District Court, defense counsel completed the production. (Ex. 1, Declaration of K. Dicke, ¶10).   A copy of discovery and documents were hand-delivered to plaintiffs' counsel at 12:59 p.m. on Friday, February 1, 2019. (Ex. 1, Declaration of K. Dicke, ¶11; Ex. 4, Letter).   After receiving and reviewing the production, the plaintiffs filed a second motion to compel on February 15, 2019, challenging all of the objections as waived (plaintiffs did not delineate specific objections as problematic) as untimely and whether information sought in four interrogatories and four requests for production is discoverable as relevant. (Doc. 53).

In response to the discovery, Defendants produced over 300 pages of documents and 227 audio clips with each of the documents reviewed for privilege, relevance and work product. (Ex. 1, Declaration of K. Dicke, ¶¶8 & 10).   Defense counsel reviewed each and every document before production and individually identified by Bates number the range of documents that were responsive to each individual request for production. (Doc. 53-3 to 53-10).   Defense counsel did not simply refer to the documents *in globo*. (*Id.*).   As described in the Declaration of undersigned counsel, the work necessary to complete was more extensive than expected with technical difficulties hampering efforts to complete the task. (Ex. 1, Declaration of K. Dicke, ¶¶5-10).   The Defendants carefully considered the discoverability of each document, including the application of privilege, work product and relevance to the documents and information contained in them. (*Id.* at ¶8). Defendants' good faith efforts to be as thorough and complete as possible – which benefited the plaintiffs – necessitated a little extra time. (*Id.* at ¶¶8, 10).   Under these circumstances, the Defendants did not waive their objections.

Furthermore, the information and documents pertaining to the 400 square foot occupancy limit that was never implemented or officially changed has no relevance to this lawsuit whatsoever.   The plaintiffs' occupancy violated the current and still-existing rule of 250 square

feet per person.  The plaintiffs' complaint is that the rule of 250 square feet improperly precluded their group of 6 from occupying the Harlan condo.  Anything related to some other rule that never went into effect and would not have changed whether they could reside in the condo has no relevance to their complaint about the rule they violated.

## II.     Defendants have not waived their objections under the circumstances

Plaintiffs contend that the Defendants have waived all objections by not providing the discovery responses and documents 30 days after service of the requests.  While it is true that the general rule is that when a party fails to object timely to discovery, the objections are waived, such waiver is not automatically applied.  Rather, the Court has discretion whether to apply waiver.[2]  Factors that courts have considered to determine whether waiver is appropriate are whether the delay was unjustified, the conduct was inexcusable, whether bad faith or other flagrant violations were involved, whether the answering party acted in good faith, whether the violations were minor and importantly, and prejudice to the party receiving the discovery. *See, e.g., B&S Equip. Co. v. Truckla Servs.*, 2011 U.S. Dist. LEXIS 2637289 (E.D. La. July 6, 2011)(citing *Applied Systems, Inc. v. Northern Ins. Co. of New York*, 1997 U.S. Dist. LEXIS 16014 (N.D. Ill. Oc. 7, 1997)); *Enron Corp. Sav. Plan v. Hewitt Assocs, LLC.*, 258 F.R.D. 149, LEXIS 30970 (S.D. TX. 2009).

When the Plaintiffs filed their first motion to compel, they knew that the discovery responses and document production would be provided that very day. (Ex. 1, Declaration; Ex. 2, email; Doc. 51-3, p.1).  Undersigned counsel advised plaintiffs' counsel on January 29, 2019, that the discovery and documents would definitely be provided February 1, 2019. (*Id.*).  Furthermore, at 2:54 a.m., undersigned counsel advised plaintiffs' counsel that the production

---

[2] If it were otherwise, answering parties would simply assert objections within the response period, even if the substance of the discovery was not ready, so as to avoid any waiver.  Such an absurd result would thwart the purpose of discovery and undermine cooperation among parties.

could not be completed until later on February 1. (Ex. 2, email).   Nevertheless, plaintiffs'

counsel, rather than waiting for the production or conferring with defendants' counsel, filed the

first motion to compel at 10:54 a.m. on February 1. (Doc. 51; Ex. 3, e-notice). The discovery was

produced by within two hours after undersigned counsel completed the hearing in state court in

another matter, just as plaintiffs' counsel was advised. (Ex. 4, Letter).   Plaintiffs suffered no

prejudice whatsoever by receiving the production midday on February 1, 2019, rather than at

9:00 a.m. that day, nor have they even attempted to demonstrate in their motions any prejudice.

Moreover, the Defendants extensively and meaningfully responded to the discovery

requests.   They produced over 300 pages of documents and over 200 audio clips.   A review of

the answers shows very thoughtful, circumspect assertion of objections, not boilerplate or vague

objections to every interrogatory or request for production. (Doc. 53-3 to Doc. 53-10).   The very

short delay in responding was necessary to ensure this thorough, thoughtful and complete

production on behalf of four different defendants, who share a common interest but are

nevertheless individual defendants with individual information. (Ex. 1, Declaration).   Hundreds

of pages of documents were reviewed and multiple consultations made in order to answer 56

separate interrogatories and 98 requests for production. (*Id.*).   The Defendants acted in good faith

with the goal of proper production of documents and complete responses to discovery.   Under

such circumstances, waiver of objections is not warranted.

The cases plaintiffs cite do not demand that this Court apply waiver under the

circumstances.   First, *Poulos v. Naas Foods, Inc.* 959 F.2d 69, 74 (7th Cir. 1992) mentions the

general rule, but that court specifically refused to review whether waiver applied in that case.   In

*Swackhammer v. Sprint Corp, PCS*, 225 F.R.D. 658, 665 (D. Kan. 2004), the district court did

not apply an across-the-board waiver.   Rather, it thoughtfully analyzed numerous responses and

objections and determined in one instance that the objection of relevancy had not been raised with the original responses and was therefore waived.  This is not the situation in this case.

Finally, the plaintiffs cite *B&S Equip. Co. v. Truckla Servs.*, 2011 U.S. Dist. LEXIS 2637289 (E.D. La. July 6, 2011), and *Parkcrest Builders, LLC v. Hous. Auth. Of New Orleans*, 2017 LEXIS U.S. Dist. 60785 (E.D.La. April 21, 2017), but those cases support that waiver of objections is not automatic or absolute.  In *B&S Equipment*, the responding party failed to answer discovery for 275 days, more than 10 times the delay in this case. 2011 U.S. Dist. LEXIS 2637289 at *10 & 14.  Moreover, unlike in this case, the responding party in *B&S Equipment* apparently never communicated with the requesting party about any reason for delay.  Further, in *Parkcrest* the Court deemed only the objections that were unsupported as waived. 2017 LEXIS U.S. Dist. 60785 at *11-16.  The Court also noted that the responding party failed to give any meaningful responses, thereby undermining and subverting the discovery process.  Here, the very reason that the Defendants needed more time to respond was to ensure meaningful responses.

But even where the courts have waived objections when the responding party did not respond within 30 days of service, they do not waive objections based on privilege or work product. *B&S Equip. Co.*, 2011 U.S. Dist. LEXIS 2637289 at *19-20.[3]  That sanction is reserved for only the most egregious violations of the discovery rules. *Id.*  There is no such flagrant violation in this case to support the waiver of such objections and plaintiffs make no such argument.  Further, the circumstances surrounding the production, as outlined in the Declaration of defense counsel, establish good faith on the part of the Defendants with no intent to

---

[3] Additionally, Rules 26(b)(1) and 26(b)(2)(C)(iii) require the courts to limit proposed discovery that "it determines is not proportional to the needs of the case, even without a motion or timely objection." *Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250 (N.D. Tex. 2017).  Therefore, objections to the proportionality of a discovery request are not truly waivable in any case.

undermine the process or cause harm to the plaintiffs.  To the contrary, they were attempting to

be thorough and complete.  Indeed, there has been no harm to the plaintiffs.  As such, there is no

basis for concluding that the Defendants waived their objections.

Ultimately, this case must be judged on its own merits.  There was absolutely no

prejudice to the plaintiffs from the short delay in responding to discovery.  The fact that the

plaintiffs filed a second motion to compel attacking the objection of relevance to certain

interrogatories and requests for production makes the point.  They could have attacked other

objections, if they deemed that such objections were insupportable.  Rather, they hope this Court

will simply wash away all objections without the plaintiffs pointing out why such objections are

improper.  That is insufficient.  In a case where the claims against the individual defendants for

acts taken in their capacities as members of a corporation, where the plaintiffs did not even

bother to fill out a rental application yet claim discrimination, where the plaintiffs remained in

the property for the entire lease period, the Court should not broaden discovery unnecessarily by

dismissing the thoughtful and supported objections of the Defendants.

### III.    Nothing about a proposed new occupancy limit is relevant and therefore is not discoverable.

The plaintiffs filed a second motion in order to compel the production of information and

documents related to the discussion and vote on changing the occupancy limit to 400 square feet

per person. (Doc. 53-1, citing Acuff Answer #6, Haile Answer #4, Jablonowski #5, all response

to Request #13, PCOA Answer #13, Response #17).  As the Court well knows, the "Parties may

obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or

defense and proportional to the needs of the case …". FED. R. CIV. P. 26(b)(1)(emphasis

supplied).  Relevance means the evidence has a "tendency to make a fact more or less probable

than it would be without the evidence" and " the fact is of consequence in determining the action." FED. R. EVID. 401.

As plaintiffs concede, this entire case is centered on the effect of the occupancy rule in the PCOA governing documents of ***250 square feet*** per person.  They contend that the ***effect*** of the rule is discriminatory, while the Defendants contend it is not.  This case is thus about whether the rule had a disparate impact on families and nothing more.  It is the facially neutral 250 square-foot-per-person rule that prohibited their tenancy under the PCOA governing documents. It is this innocuous rule that is the "challenged practice" in this case, plain and simple, because this is the rule that applied throughout the time of their tenancy, not the proposed 400 square foot rule.  This simple rule is either permitted by the FHA or not.  The proposed or discussed change to the rule has no bearing whatsoever on whether the 250 square foot rule has disparate impact or not.  Its existence or not has no tendency to render the effect of the 250 square foot rule disparate or not.  It simply does not matter to this case.

Plaintiff contend that the 400 square foot rule took effect immediately, citing an email they obtained from an unknown source. (See Doc. 53-11, Exhibit I).  However, the governing documents themselves require amendments to be recorded to make them effective. (Ex. 7, Condo Declaration, p.25, PCOA-00025).  This is consistent with the condominium law at Louisiana Revised Statute 9:1122.101, which requires the documents and any changes to recorded in the conveyance records.  Thus, no matter whether the condo association members wanted to make the rule change immediate, it had no effect until it was recorded in the public record.  Since that never happened, the rule did not change and was never applicable in this case.  But even if it was in effect immediately, it did not change anything about the fact that the plaintiffs had too many people for the condo.

The plaintiffs also argue that the discussed change proves a discriminatory animus, because it was enacted after the plaintiffs moved in and amid objections by the PCOA members to their occupancy.  This argument is unavailing.  Voting to change the limit to something that would not change whether the plaintiffs' occupancy was permitted would be pointless if the goal was to discriminate against families.[4]  Moreover, none of the condo owners here were involved in the establishment of the condominium regime or the creation of the 250 square feet per person. (Doc. 53-9, #1 & 3).  Therefore, the only path to victory for the plaintiffs is to prove that the 250 square foot rule that pertained to them has a disparate impact on families.[5]  Nothing about a proposed new occupancy limit will have any effect on that issue.

## IV.    Conclusion.

In sum, the Defendants acted in good faith with the sole goal of making and thorough and complete production to the Plaintiffs in furtherance of the purposes of discovery.  The delay in doing so did not prejudice the Plaintiffs in any way and in fact, demonstrated that they were not, by filing the second motion to compel to challenge the answers.  Under these circumstances, the Defendants did not waive their objections to discovery.  Further, the Defendants' objection to the relevancy of the Plaintiffs' requests for information and documentation about the reasons for proposing and discussing a change in the occupancy limit is well-supported.   The only occupancy rule that ever applied to the Plaintiffs was 250-square feet per person.  This this case is focused on the effect and impact of that rule.  Nothing about the proposed change has any relevance to that issue.  Therefore, the plaintiffs' two motions to compel should be DENIED.

---

[4] Had the plaintiffs been in compliance with the limit and then it was changed to make their occupant non-compliant, then the plaintiffs might have a basis for obtaining the information.  As is, the information is worthless because it had no effect on the plaintiffs.

[5] If 250 Square feet per person is deemed to violate the FHA, then there is no question that 400 square feet per person would violate the FHA as well.  The question whether a 400 square foot per person limit is invalid even if a 250 square foot per person limit is valid is simply not before the Court, because the plaintiffs were never subject to such a limit.  Therefore, nothing about that proposal is relevant.

WHEREFORE the Defendants pray that both of the plaintiffs' motions to compel are

DENIED, and for all other relief deemed just and proper.

Respectfully submitted,

/s/ *Karen M. Dicke*

Karen M. Dicke (#24781)
Nicole T. Bowyer (#34252)
Lewis Brisbois Bisgaard & Smith LLP
400 Poydras Street, Suite 1300
New Orleans, Louisiana  70130
Telephone: (504) 322-4100
Facsimile: (504) 754-7569

**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been delivered to all counsel of record on March 12, 2019, by ECF filing, by hand delivery, by telephonic facsimile transmission, or by depositing a copy of same in the United States Mail, first class postage prepaid, at their last known addresses of record.

/s/ Karen M. Dicke