## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DWAYNE TREECE, ET AL.** | **CIVIL ACTION** |
| **Plaintiffs** | |
| **VERSUS** | **NO. 17-10153** |
| **PERRIER CONDOMINIUM OWNERS** | **SECTION: "E"** |
| **ASSOCIATION, INC., ET AL.,** | |
| **Defendants** | |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by Defendants Katherine E. Acuff, Chris Jablonowski, Hanna Haile, and the Perrier Condominium Owners Association, Inc (PCOA).[1] Plaintiffs Dwayne Treece, Phallon Treece, and Clifford Harlan oppose the motion.[2] Defendants filed a Reply.[3] Plaintiffs filed a Surreply.[4] Defendants filed a Response to the Surreply.[5] For the following reasons, Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

On August 16, 2017, Plaintiffs Dwayne and Phallon Treece, along with their four children, rented a condominium unit in a four-unit building located at 6032–6038 Perrier Street, New Orleans, Louisiana ("the Building").[6] Clifford Harlan is the owner of the unit and a member of the PCOA.[7] Defendants Acuff, Jablonowski, and Haile are the owners of the other units and also members of the PCOA.[8] Plaintiffs allege Defendants

---

[1] R. Doc. 117.
[2] R. Doc. 128.
[3] R. Doc. 149.
[4] R. Doc. 156.
[5] R. Doc. 163.
[6] R. Doc. 128, at 4.
[7] *Id.*
[8] R. Doc. 16.

violated the Fair Housing Act by discriminating against the Treeces on the basis of familial status, attempting to evict the Treeces, and attempting to force Harlan to evict the Treeces.[9] Plaintiffs seek declaratory relief, injunctive relief, and damages for these alleged violations.[10] Defendants now move for summary judgment on all claims.[11]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] "An issue is material if its resolution could affect the outcome of the action."[13] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[14] All reasonable inferences are drawn in favor of the nonmoving party.[15] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[16]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[17] If the dispositive issue is one on which the nonmoving party will bear the burden

---

[9] *Id.* ¶¶ 2–3.
[10] *Id.* at 17–18.
[11] R. Doc. 117.
[12] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[13] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[14] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[15] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[16] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[17] *Celtic Marine Corp. v. James C. Justice Cos.*, 760 F.3d 477, 481 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 323).

of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[18]

When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[19] When proceeding under the second option, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[20] The burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[21] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[22] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of

---

[18] *Celotex*, 477 U.S. at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322–24, and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[19] *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[20] *Celotex*, 477 U.S. at 332–33.
[21] *Id.*
[22] *Id.* at 332–33 & n.3.

these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[23]

"[U]nsubstantiated assertions are not competent summary judgment evidence."[24] The opposing party must "identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[25]

Under Rule 56(f), the Court may "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."[26] In cases in which one party has moved for summary judgment, but the opposing party has not filed a cross motion, the Court "may grant summary judgment against the movant, even though the opposite party has not actually filed a motion for summary judgment."[27] Such treatment is appropriate in cases that can be resolved as a matter of law[28] and in which the "movant has had an adequate opportunity to show that a genuine factual dispute remains and that the opponent is not entitled to judgment as a matter of law."[29]

## **FACTS**

The following facts are undisputed. In the spring and summer of 2017, the Treeces sought to rent a residence for their family of six.[30] They considered two potential

---

[23] *Id.*; *see also First Nat'l Bank of Ariz. V. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).
[24] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324).
[25] *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[26] Fed. R. Civ. P. 56(f)(3).
[27] *Landry v. G.B.A.*, 762 F.2d 462, 464 (5th Cir. 1985).
[28] *Kirschenbaum v. Spraggins*, 752 F. Supp. 2d 728, 743 (E.D. La. 2010).
[29] 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720.1 (2016).
[30] R. Doc. 16 ¶¶ 20, 21; R. Doc. 49 ¶¶ 20, 21.

condominium units in the Building.[31] Harlan, Acuff, Jablonowski, and Haile each own a separate unit in the Building and an undivided interest in the common areas.[32] In May 2017, the Treeces looked at Haile's unit,[33] but did not rent from her.[34] Instead, on August 16, 2017, the Treeces rented Harlan's unit.[35] That same day, Harlan emailed the other unit owners to inform them he had rented his unit to the Treeces.[36]

Within hours, Haile responded to Harlan's email, copying Acuff and Jablonowski, stating, "This renter, Dwayne, had actually contact [sic] me in regards to renting my unit the very first week I posted it. He came to look with his youngest child. He is a nice guy but I decided the condo was not the best fit as they have 3 small children."[37] Acuff also responded to Harlan's email that same day, and asked, "How long is their lease? And how many children do they have? They are moving in as I write this and I am listening to a kid screaming through the wall and running all over the floors."[38] At that time, the PCOA had in place a facially neutral occupancy rule limiting the occupation of the units in the Building to one person per 250 square feet.[39] The Treece family exceeded this limit.[40]

On September 29, 2017, Acuff, Jablonowski, Haile, and Harlan held a special meeting of the PCOA to discuss the Treece family.[41] The PCOA is a non-profit corporation governing the condominium regime.[42] The PCOA's members consist entirely of the four

---

[31] R. Doc. 117-1 ¶ 1; R. Doc. 128-1, at 1.
[32] R. Doc. 117-1 ¶ 2; R. Doc. 128-1, at 2; R. Doc. 117-4, at 6.
[33] R. Doc. 16 ¶¶ 21–23; R. Doc 49 ¶¶ 21–23.
[34] R. Doc. 117-1 ¶ 4; R. Doc. 128-1, at 3.
[35] R. Doc. 16 ¶ 1; R. Doc 49 ¶ 1.
[36] R. Doc. 16 ¶ 35; R. Doc 49 ¶ 35; R. Doc. 128-5.
[37] R. Doc. 16 ¶ 37; R. Doc 49 ¶ 37; R. Doc. 128-3. It is undisputed that the Treeces actually have four children. R. Doc. 128, at 3.
[38] R. Doc. 16 ¶ 36; R. Doc 49 ¶ 36; R. Doc. 128-3.
[39] R. Doc. 117-1 ¶ 6; R. Doc 128-1, at 3–4.
[40] R. Doc. 16 ¶ 41; R. Doc 49 ¶ 41.
[41] R. Doc. 16 ¶ 47; R. Doc. 49 ¶ 47.
[42] R. Doc. 16 ¶ 17; R. Doc 49 ¶ 17.

condominium unit owners.[43] At the September 29 meeting, Acuff, Jablonowski, and Haile voted, over Harlan's dissent, to impose a daily $100 fine against Harlan for renting to the Treeces, to pursue the Treeces' eviction, to assess legal fees associated with the eviction against Harlan, to obtain an attorney, and to install a camera in the Building's common area stairwell.[44] Based on these actions, and others, the Treeces filed suit against their landlord, Harlan, on October 4, 2017.[45]

Acuff personally installed the camera in the second floor common area stairwell in March 2018.[46] At some later point, Acuff also installed a recording device in her unit to record sounds generated by the Treeces.[47] The PCOA ultimately formally fined Harlan for violating the condominium declaration, rules, regulations, and by-laws and placed a lien against his unit.[48] The Treeces were not included in any email communications between the unit owners.[49] Jablonowski had no direct contact with the Treeces.[50]

After these measures were taken, an amended complaint was filed on May 2, 2018, in which Harlan joined as a plaintiff and the other unit owners and the PCOA were named as defendants.[51] Both the Treeces and Harlan now seek relief from the other unit owners and the PCOA.[52]

A number of material facts remain in dispute. First, the parties dispute several facts regarding the measures Defendants took in an attempt to evict the Treeces. For example, the parties dispute whether the Treeces were invited to or included in a meeting of the

---

[43] R. Doc. 16 ¶ 18; R. Doc 49 ¶ 18.
[44] R. Doc. 16 ¶¶ 47–55; R. Doc 49 ¶¶ 47–55.
[45] R. Doc. 2.
[46] R. Doc. 16 ¶¶ 2, 55; R. Doc 49 ¶¶ 2, 55.
[47] R. Doc. 16 ¶ 53; R. Doc 49 ¶ 53.
[48] R. Doc. 16 ¶ 2; R. Doc 49 ¶ 2.
[49] R. Doc. 117-1 ¶ 3; R. Doc 128-1, at 2–3.
[50] R. Doc. 117-1 ¶ 7; R. Doc 128-1, at 4.
[51] R. Doc. 16.
[52] *Id.*

PCOA members. Defendants assert it is an undisputed fact the Treeces were never invited to or included in a meeting of the PCOA members nor included in any emails between the members, citing the Acuff affidavit executed in her capacity as the president of the PCOA and the Treeces' answers to interrogatories numbers 8, 10, and 12.[53] Plaintiffs dispute this fact and point to evidence that, although they never attended a PCOA board meeting, they did meet with Acuff and Haile in November 2017, citing Plaintiffs' answers to interrogatories verified by Dwayne Treece.[54]

The parties also dispute whether the PCOA occupancy rule, which was purportedly amended on August 22, 2017, from one resident per 250 square feet to one resident per 400 square feet, was formally amended and whether any such amendment was intended to be used against the Treeces.[55] Based on the declarations and verified answers to interrogatories of Acuff, Jablonowski, and Haile, Defendants state it is an undisputed fact the occupancy rule was never formally changed and, in any event, the rule was not intended to apply to the Treeces.[56] Plaintiffs dispute this and point to emails among the Defendants stating the rule was adopted and to be given immediate effect.[57]

Next, the parties dispute whether Defendants locked the Treeces out of a common storage shed. Plaintiffs include as a material fact in dispute whether Defendants changed the lock to deny the Treeces access to the shed.[58] To support this, Plaintiffs point to emails in which Defendants say renters are not allowed to use the shed and the renters' property should be moved out of the shed.[59] Defendants deny this, citing their emails in which they

---

[53] Doc 117-1 ¶ 3 (citing R. Doc. 117-3, at 1, 7).
[54] R. Doc. 128-1, at 2-3 (citing R. Doc. 117-3, at 37).
[55] R. Doc. 117-1 ¶ 8; R. Doc. 128-1, at 4–5.
[56] R. Doc. 117-1 ¶ 8 (citing R. Doc. 117-3, at 2, 71–72, 81–82, 92).
[57] R. Doc. 128-1, at 4–5 (citing R. Doc. 128-10).
[58] *Id.* at 13 (citing R. Doc. 128-21, at 1–2).
[59] R. Doc. 128-21, at 2–4.

say they replaced the lock on the shed because it was not working.[60] Finally, the parties dispute the reason Defendants installed a camera in the common stairwell. Plaintiffs assert the camera was installed to monitor the Treeces' unit and support this with Defendants' emails and Acuff's answers to interrogatories stating they installed the camera to verify the number of children in the Treeces' family.[61] Defendants claim they installed the camera for safety reasons as demonstrated by the fact it was installed months after the Treeces moved in.[62]

## LAW AND ANALYSIS

The Fair Housing Act (FHA)[63] "prohibits discrimination in the sale or rental of housing."[64] "The FHA, as originally enacted in 1968, prohibited discrimination based on race, color, religion, or national origin."[65] "In 1988, Congress extended coverage to persons with handicaps and also prohibited 'familial status' discrimination, i.e., discrimination against parents or other custodial persons domiciled with children under the age of 18."[66]

Plaintiffs claim they are entitled to relief under the FHA based on Defendants' violations of 42 U.S.C. § 3604(a), (b), (c), and (d) and § 3617.[67] Defendants' motion for summary judgment asserts Defendants are entitled to judgment as a matter of law that they are not liable under any of these provisions. First, Defendants claim § 3604(a), (b), and (d) do not apply to this case because Defendants are exempt from those provisions

---

[60] R. Doc. 143-1, at 15 (citing R. Doc. 128-21, at 3).
[61] R. Doc. 128-1, at 12 (citing R. Doc. 128-19, at 2; R. Doc. 117-3, at 72.).
[62] R. Doc. 117-2, at 24; R. Doc. 149, at 14–15.
[63] 42 U.S.C. §§ 3601–3631.
[64] *Avalon Residential Care Homes, Inc. v. GE Fin. Assur. Co.*, No. CIV.A.3:02-CV-0631-L, 2002 WL 32359947, at *2 (N.D. Tex. Oct. 18, 2002), *aff'd sub nom. Avalon Residential Care Homes, Inc. v. GE Fin. Assurance Co.*, 72 F. App'x 35 (5th Cir. 2003).
[65] *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728 n.1 (1995).
[66] *Id.* (citing 42 U.S.C. § 3602(k)).
[67] R. Doc. 16 ¶¶ 70–79.

by § 3603(b)(2).[68] Second, Defendants argue they did not violate § 3604(c), which makes it unlawful to make discriminatory statements or advertisements "with respect to the sale or rental of a dwelling,"[69] Third, Defendants claim they have not engaged in any acts covered by § 3617, which makes it unlawful "to coerce, intimidate, threaten, or interfere with any person" in their enjoyment of the rights guaranteed under the FHA.[70] Last, Defendants Acuff, Haile, and Jablonowski argue they cannot be held personally liable for the acts of the PCOA.[71]

## I.    Defendants Do Not Qualify for the "Mrs. Murphy" Exemption

Section 3603(b)(2) of the Fair Housing Act provides "[n]othing in section 3604 of this title (other than subsection (c)) shall apply to . . . rooms or units in dwellings containing living quarters occupied or intended to be occupied by no more than four families living independently of each other, if the owner actually maintains and occupies one of such living quarters as his residence."[72] This exemption is commonly referred to as the "Mrs. Murphy" exemption because it was designed to exempt the hypothetical elderly woman who chooses to convert a portion of her home into a rental unit.[73]

Section 3603(b) is an affirmative defense, and a defendant bears the burden of proving it applies.[74] For a defendant to qualify for this exemption, he or she must show (1) the building in question is a "dwelling," (2) the dwelling is occupied or intended to be occupied by no more than four families living independently of each other, (3) the defendant owns the dwelling, and (4) the defendant actually uses one of such living

---

[68] 42 U.S.C. 3603(b); R. Doc. 117-2, at 9.
[69] 42 U.S.C. 3604(c).
[70] 42 U.S.C. 3617; R. Doc. 117-2, at 14.
[71] R. Doc. 117-2, at 19.
[72] 42 U.S.C. §3603(b)(2).
[73] 114 Cong. Rec. 2495, 3345 (1968).
[74] *U.S. v. Space Hunters, Inc.*, 429 F.3d 416, 426 (2nd Cir. 2005).

quarters as his or her residence. Element three—that the defendant owns the dwelling—is the decisive element in this case.

The Supreme Court has stated exemptions from the Fair Housing Act should be read narrowly.[75] "Owner," in the FHA context, means a single individual, or something akin to an individual like a married couple, who owns and has rights to a dwelling.[76] For example, in a case out of the Eastern District of New York, the court held a married couple was exempt from the FHA under § 3603(b) because they converted their co-owned home into three units and lived in one.[77]

In this case, Defendants assert it is an undisputed fact the "[t]he Perrier Condominium is a single house with four units."[78] Plaintiffs disagree that the Building is a "single house" and assert, based on the Perrier Condominium Articles of Declaration,[79] "[t]he Perrier Condominium is a condominium regime established under the Louisiana Condominium Act, under which portions of immovable property are subject to individual ownership."[80] Defendants' also assert it is an undisputed fact that Harlan, Acuff, Jablonowski, Haile, and the PCOA are the "owner" of the Building.[81] Plaintiffs dispute this and point out that, under the Perrier Condominium Articles of Declaration, each unit, together with an inseparable undivided interest in the common elements, constitutes an individually owned "separate parcel of immovable property."[82]

---

[75] *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731–32 (1995).
[76] *See Johnson v. Zaremba*, 381 F. Supp. 165, 165 (N.D. Ill. 1973) (holding the exemption available where defendant owned a four-unit complex, lived in one unit, and rented out the others).
[77] *Gonzalez v. Rakkas*, No. 93 CV 3229 (JS), 1995 WL 451034, at *9 (E.D.N.Y. July 25, 1995).
[78] R. Doc. 117-1 ¶ 1.
[79] R. Doc. 117-4, at 2.
[80] R. Doc. 128-1, at 2.
[81] R. Doc. 117-1 ¶ 2.
[82] R. Doc. 128-1, at 2 (citing R. Doc 117-4, at 5).

Based on the record evidence cited by Plaintiffs, the Court finds Defendants are not a single individual or a married couple owning the Building, and the Building is not a "single house" owned by the Defendants. Instead, Harlan, Acuff, Jablonowski, and Haile each own an individual unit and an undivided interest in the common area, and the PCOA does not own anything. Under the PCOA's by-laws, "Each Unit . . . constitute[s] a separate parcel of immovable property which may be owned, conveyed, transferred . . . independently of all other parts of the Condominium Property."[83] The plain language of the by-laws makes clear each owner only has rights in his or her own unit and an undivided interest in the common area, not an interest in the entire Building. This independent ownership structure is borne out by the facts of this case. The Treeces rented a unit owned solely by Harlan.[84] Neither Defendants Acuff, Haile, and Jablonowski nor the PCOA has any ownership interest in Harlan's unit.

For the forgoing reasons, there is no disputed issue of material fact. Defendants individually own a part of the Building, and the Building does not have one "owner."[85] Accordingly, as a matter of law, Defendants cannot claim the Mrs. Murphy exemption. Because Defendants have had an adequate opportunity to show that a genuine factual dispute remains, but have failed to do so, Plaintiffs are entitled to judgment as a matter of law"[86] that the §3603(b)(2) exemption does not apply.[87]

---

[83] R. Doc. 117-4, at 5.

[84] R. Doc. 128, at 12.

[85] The Court need not reach whether the other requirements have been met because Defendants must show they satisfy all four elements of the § 3603(b) exemption, and they fail to show they are the "owner" of the Building.

[86] 1A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2720.1 (2016).

[87] In cases where one party has moved for summary judgment, but the opposing party has not filed a cross motion, the Court "may grant summary judgment against the movant, even though the opposite party has not actually filed a motion for summary judgment." *Landry v. G.B.A.*, 762 F.2d 462, 464 (5th Cir. 1985).

## II. Defendants Are Not Liable Under 42 U.S.C. § 3604(c) for Haile's August 16, 2017, Email Regarding Plaintiffs' Children

42 U.S.C. § 3604(c) provides it is unlawful "to make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . familial status . . . or an intention to make any such preference, limitation or discrimination."[88] To succeed on a claim under §3604(c), a plaintiff must prove a defendant (1) made a statement (2) with respect to the sale or rental of a dwelling (3) that indicated a preference based on protected class membership."[89]

Plaintiffs bring their § 3604(c) claim based on an email all agree was sent by Haile to the other PCOA members after Haile found out Harlan had rented his unit to the Treeces.[90] Haile's email stated in relevant part, "I decided [my] condo was not the best fit as they have 3 small children."[91] Because this statement did not concern a prospective sale or rental, Defendants have shown Plaintiffs cannot prove this statement meets the second element of a claim under § 3604(c)—that it was made "with respect to the sale or rental of a dwelling."[92]

For a statement to be made "with respect to the sale or rental of a dwelling," under § 3604(c), it must concern "the prospective sale or rental of an available dwelling."[93] The Fifth Circuit has held, based on "an ordinary and natural reading to the language and context," § 3604 "proscribe[s] housing discrimination in two contexts: 1) the selling or

---

[88] 42 U.S.C. § 3604(c).
[89] *Greater New Orleans Fair Hous. Action Ctr. v. Kelly*, 364 F. Supp. 3d 635, 653 (E.D. La. 2019) (quoting *White v. United States Dept. of Hous. And Urb. Dev.*, 475 F.3d 898, 904-05 (7th Cir. 2007).
[90] R. Doc. 128, at 18.
[91] R. Doc. 128-3, at 1.
[92] 42 U.S.C. 3604(c).
[93] *Kelly*, 364 F. Supp. 3d at 654.

renting of a dwelling, and 2) the otherwise making unavailable or denying of a dwelling."[94] "The Fair Housing Act contains no hint either in its language or its legislative history of a concern with anything but *access* to housing."[95] Accordingly, § 3604 claims must regard the "availability" of housing, not its mere "habitability" after housing has been occupied[96]

These general rules, discussed above, apply equally to § 3604(c). The Court finds § 3604(c)'s proscription of discriminatory statements made "with respect to the sale or rental of a dwelling" applies only to statements concerning the "availability" of housing.[97] Under this construction, § 3604(c) prohibits only discriminatory statements made during the rental process or in connection with a prospective or future sale.[98] To be sure, statements of past discrimination may serve as damning evidence of a separate FHA violation—such as a violation of § 3604(a) or (b)—but they are not themselves actionable under § 3604(c).

In *Greater New Orleans Fair Housing Action Center v. Kelly*, another section of this Court adopted this same reasoning.[99] In *Kelly*, the plaintiffs alleged the defendant made four statements that discriminated against them on the basis of sex.[100] Two of these statements occurred during the process of renting an apartment—(1) during a meeting with a prospective tenant to sign a lease and (2) during a tour of one of the defendant's apartments—and two occurred outside of that process—(1) to a former tenant and (2) to a reporter. The court determined the two statements made during the process of renting the apartments were actionable under § 3604(c) but the two statements made outside the

---

[94] *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 531 (5th Cir. 1996).
[95] *Cox v. City of Dallas*, 430 F.3d 734, 741 (5th Cir. 2005) (citing *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 329 (7th Cir. 2004)).
[96] *Id.*
[97] *Cox*, 430 F.3d at 741.
[98] *Kelly*, 364 F. Supp. 3d at 654.
[99] *Id.*
[100] *Id.* at 641.

rental process were not.[101] In reaching this conclusion, the court in *Kelly* referenced a case in which the district court for the Middle District of Florida held "the plain language of Section 3604(c) indicates that to create liability either a sale or rental of a dwelling needs to occur or at least be potentially occurring."[102] After citing this case, the court in *Kelly* determined § 3604(c) creates "liability only when a defendant makes statements in connection with the prospective sale or rental of an available dwelling."[103] The trial court found this interpretation "comports with the statute's plain language and purpose."[104]

The Department of Housing and Urban Development has concurred with the conclusion that § 3604(c) applies only to statements made in connection with the prospective sale or rental of an available dwelling. In *HUD v. Gruzdaitis*, the Administrative Law Judge described § 3604(c) as prohibiting discriminatory statements "during the process of renting [an] apartment."[105] Further, in HUD's regulation interpreting § 3604(c), HUD states § 3604(c) proscribes, among other things, discriminatory "applications, flyers, brochures, deeds, signs, banners, posters, billboards or any documents used with respect to the sale or rental of a dwelling."[106] Though this list is non-exhaustive, the regulation makes clear the focus of § 3604(c) is on discriminatory statements made before or during the rental or sale process, not after.

---

[101] *Id.* at 653–54.

[102] *Gourlay v. Forest Lake Estates Civic Ass'n of Port Richey, Inc*., 276 F. Supp.2d 1222, 1235 (M.D. Fla. 2003) ("The plain language of Section 3604(c) indicates that to create liability either a sale or rental of a dwelling needs to occur or at least be potentially occurring. Most courts that have considered this issue have concluded that the plain meaning of Section 3604(c) require a sale or rental or prospective sale or rental.").

[103] *Kelly*, 364 F. Supp. 3d at 654.

[104] *Id.*

[105] *The Sec'y, United States Dep't of Hous. & Urban Dev., on Behalf of Sheila Stover, Charging Party v. Gruzdaitis*, No. 02-96-0377-8, 1998 WL 482759, at *4 (Aug. 14, 1998).

[106] 24 CFR 100.75; *see also Inclusive Communities Project, Inc. v. Texas Dept. of Hous. and Comty. Affairs*, 747 F.3d 275, 282 (5th Cir. 2014) ("Congress has given HUD authority to administer the FHA, including authority to issue regulations interpreting the Act.").

In this case, Haile did not send her email[107] in connection with "the prospective sale or rental of an available dwelling." Instead, she sent it *after* the Treeces had signed a lease to rent Harlan's unit.[108] In fact, Haile sent the email in response to Harlan's email informing the owners of his rental to the Treeces.[109] This email is unlike the actionable statements in *Kelly* made before or during the rental process.[110] Defendants are entitled to summary judgment that they did not violate § 3604(c).[111]

## III. Defendants Are Not Entitled to Summary Judgement on Plaintiffs' Claim Under 42 U.S.C. § 3617

42 U.S.C. § 3617 provides:

> It shall be unlawful to coerce, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

Though this section protects plaintiffs from a wide array of harms, Congress did not intend the FHA to "convert every quarrel among neighbors . . . into a federal case."[112] "Section 3617 does not impose a code of civility on neighbors."[113] "To hold otherwise would be to extend § 3617 to conduct it was never intended to address and would have the effect of demeaning the aims of the [FHA] and the legitimate claims of plaintiffs who have

---

[107] R. Doc. 128-3, at 1.

[108] *Id.*

[109] *Id.*

[110] *Kelly*, 364 F. Supp. 3d at 654.

[111] The Court also notes any other outcome could raise serious First Amendment concerns because Haile sent her email to three private parties, and the email was likely not "commercial" in nature. *United States v. Hunter*, 459 F.2d 205, 211 (4th Cir. 1972) (agreeing that "§ 3604(c) limits advertising an intent to discriminate in the sale or rental of a dwelling only in a commercial context and not in relation to the dissemination of ideas" lest the First Amendment be contravened).

[112] *Reule v. Sherwood Valley I Council of Co-Owners, Inc.*, No. CIV.A. H-05-3197, 2005 WL 2669480, at *4 (S.D. Tex. Oct. 19, 2005) (*citing Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004)).

[113] *Id.* (citing *Sporn v. Ocean Colony Condominium Ass'n*, 173 F.Supp.2d 244, 251 (D.N.J. 2001).

been subjected to invidious and hurtful discrimination and retaliation in the housing market."[114]

Before analyzing the elements of Plaintiffs' claim, the Court notes it is unclear whether Plaintiffs must meet a threshold of showing they suffered an underlying FHA violation before they may bring a § 3617 claim. Circuit courts disagree on whether § 3617 requires a plaintiff to first establish some underlying violation of §§ 3603, 3604, 3605, or 3606 before proceeding under § 3617. At least five federal appellate courts have rejected this requirement and held § 3617 claims may exist even absent an underlying FHA violation.[115] According to these courts, any contrary holding would render § 3617 superfluous.[116] Beyond these appellate courts, the United States Department of Housing and Urban Development has also broadly interpreted § 3617 to prohibit "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling because of . . . familial status," without any requirement of an underlying FHA violation.[117]

The Fifth Circuit, however, has indicated § 3617 claims *do* require an underlying violation of §§ 3603, 3604, 3605, or 3606. For example, in *Hood v. Pope*, the Fifth Circuit

---

[114] *Id.* (citing *Sporn,* 173 F. Supp. 2d at 251–52).

[115] *Bloch v. Frischholz*, 587 F.3d 771, 781–82 (7th Cir. 2009) ("We know that the Association's enforcement of the Hallway Rule did not constructively evict the Blochs in violation of § 3604(a) or (b). But that does not foreclose the possibility that the defendants 'interfered' with the Blochs' enjoyment of their § 3604 rights or 'coerced' or 'intimidated' the Blochs on account of their having exercised those rights. To hold otherwise would make § 3617 entirely duplicative of the other FHA provisions; though its language is unique in the FHA, § 3617 would have no independent meaning."); *Hidden Vill., LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 528 (6th Cir. 2013) ("[T]he defendants argue that they may not be charged with violating § 3617 unless they separately violated at least one of the provisions in §§ 3603–3606. We disagree. Section 3617 nowhere says that it comes into play only when a violation of one of these other sections has also occurred."); *Revock v. Cowpet Bay West Condominium Association*, 853 F.3d 96, 112 (3d Cir. 2017); *U.S. v. City of Hayward*, 36 F.3d 832, 836 (9th Cir. 1994); *Sofarelli v. Pinellas County*, 931 F.2d 718, 722 (11th Cir. 1991).

[116] *Bloch*, 587 F.3d at 781–82.

[117] 24 C.F.R. § 100.400(c). HUD's interpretations of the FHA carry much weight. *See Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 747 F.3d 275, 282 (5th Cir. 2014), *aff'd* 135 S. Ct. 2507 (2015) (adopting HUD's interpretation of § 3604 and noting "Congress has given HUD authority to administer the FHA, including authority to issue regulations interpreting the Act").

held a plaintiff had failed to state a claim under § 3604, and therefore, "[a]ny subsequent harassment by any of the defendants did not violate § 3617."[118] Similarly, in *McZeal v. Ocwen Financial Corp.*, the Fifth Circuit held "[b]ecause [plaintiff's] § 3605 claim fails, [his] claim under § 3617 must also fail."[119]

Plaintiffs' claims under § 3604(a), (b), and (d) have not been decided. As already explained, Defendants are not exempt from § 3604(a), (b), and (d) under § 3603(b)(2), and Defendants have not otherwise moved for dismissal of or summary judgment on those § 3604 claims. Because Plaintiffs have outstanding § 3604 claims,[120] the Court is not required to decide at this time whether or not the Fifth Circuit requires an underlying violation to bring a § 3617 claim. Instead, the Court will assume Plaintiffs have underlying § 3604(a), (b), and (d) claims and determine whether Defendants are entitled to summary judgment on Plaintiffs' § 3617 claims.

To succeed on their claim under § 3617, Plaintiffs must show: (1) they are protected individuals under the Fair Housing Act, (2) they engaged in the exercise or enjoyment of fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with them on account of protected activity under the Act, and (4) the defendants were motivated by an intent to discriminate.[121]

---

[118] 627 F. App'x 295, 300 (5th Cir. 2015).

[119] 252 F.3d 1355 (5th Cir. 2001); *see also Varrecchio v. Friends All. Hous. II, Inc.*, No. CV 18-8915, 2018 WL 6510740, at *3 (E.D. La. Dec. 11, 2018) (relying on *Hood* and *McZeal* to hold "There was no evidence presented at the hearing that Plaintiff was evicted because of her exercise of any right granted to her by the FHAA. Accordingly, Plaintiff has not demonstrated a likelihood of success on [her § 3617] claim"). *But see Oxford House, Inc. v. City of Baton Rouge, La.*, 932 F. Supp. 2d 683, 701 (M.D. La. 2013) (holding "it is not necessary for a plaintiff to establish an underlying claim of discrimination to prevail on a retaliation claim" under § 3617).

[120] R. Doc. 16 ¶¶ 75, 79. Plaintiffs also allege Defendants violated § 3604(c), but the Court grants Summary Judgment for Defendants on that allegation.

[121] *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009) (citing *E.-Miller v. Lake Cty. Highway Dep't*, 421 F.3d 558, 563 (7th Cir. 2005)).

Defendants contend there are no material facts in dispute and Plaintiffs have put forth no evidence to support element three—that Defendants coerced, threatened, intimidated, or interfered with Plaintiffs on account of their protected activity under the FHA.[122] Because Defendants, as movants, assert Plaintiffs have put forth no evidence to support element three of their their § 3617 claim, Plaintiffs have the burden of defeating this motion by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party" that establishes a disputed issue of fact with respect to this element.[123] If Plaintiffs do this, the burden then shifts back to Defendants to demonstrate the inadequacy of the evidence relied upon by Plaintiffs.[124] In this case, Plaintiffs have, at least, raised disputed issues of material fact as to whether Defendants "interfered" with Plaintiffs' enjoyment of their fair housing rights and Defendants have not demonstrated the inadequacy of the evidence relied upon by Plaintiffs.[125]

The parties focus on whether Defendants "interfered" with Plaintiffs' enjoyment of the fair housing rights. The Fifth Circuit has not defined "interference" in § 3617. The Fifth Circuit has held in other contexts within the FHA, that a discriminatory appraisal that prevents individuals from selling a home for fair market value "interferes" with the availability of housing.[126] Further, district courts in the Fifth Circuit have held both successful and unsuccessful interference with fair housing rights violates § 3617. "It is

---

[122] R. Doc. 117-2, at 14.

[123] *Celotex*, 477 U.S. at 332–33.

[124] *Id.*

[125] The Court focuses on "interference" under § 3617 because it appears to be the lowest hurdle, and if Plaintiffs have raised disputed issues of material fact as to whether Defendants interfered with their fair housing rights, summary judgment is precluded.

[126] *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1386 (5th Cir. 1986).

[127] *United States v. Wagner*, 940 F. Supp. 972, 978 n.9 (N.D. Tex. 1996) ("The Court does not agree with Defendants that there needs to be a consequence of the interference.").

the nature of Defendants' conduct, rather than the harm caused by the conduct, that determines whether a practice violates § 3617."[128] Nothing in the language of § 3617 itself restricts its application to cases in which the coercion or interference is successful.

Other courts have defined "interference" as a "pattern of harassment, invidiously motivated"[129] or as "harassment, provided that it is 'sufficiently severe or pervasive' as to create a hostile environment."[130] Because the FHA does not turn every neighborly disagreement into a federal case, "interference" must be more than a "quarrel among neighbors" or an "isolated act of discrimination."[131] Nevertheless, the prohibition "is not limited to those who used some sort of 'potent force or duress,' but extends to other actors who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus."[132] For example, several courts have held a defendant's imposition of fines or liens on property in order to get a renter to leave or a landlord to evict someone for discriminatory reasons violates § 3617.[133] In *Petty v. Portofino Council of Coowners, Inc.*, the District Court for the Southern District of Texas determined a defendant's actions to make a common area unavailable for discriminatory reasons could violate § 3617.[134] In *Bloch v. Frischolz*, the Seventh Circuit determined

---

[128] *Id.*
[129] *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004).
[130] *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 113 (3d Cir. 2017) (citing *Quigley v. Winter*, 598 F.3d 938, 947 (8th Cir. 2010); *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993)).
[131] *Id.*
[132] *Texas v. Crest Asset Mgmt., Inc.*, 85 F. Supp. 2d 722, 732–33 (S.D. Tex. 2000).
[133] *Arnal v. Aspen View Condo. Ass'n, Inc.*, 226 F. Supp. 3d 1177, 1188 (D. Colo. 2016) (holding a condominium association's imposition of fines and liens on an owner due to his leasing of his unit to a person with an disability-assistance animal is conduct that a jury could conclude violates § 3617); *Revock*, 853 F.3d at 96 (holding a condominium association member's posting derogatory remarks and threatening fees and liens for a resident having an assistance animal for disability is conduct that a jury could conclude violates § 3617).
[134] 702 F. Supp. 2d 721, 731 (S.D. Tex. 2010).

"*attempted* discriminatory evictions can violate § 3617's prohibition against interference with § 3604 rights."[135]

Plaintiffs have called the Court's attention to record evidence raising factual disputes with respect to whether Defendants "interfered" with Plaintiffs' enjoyment of their fair housing rights. Harlan asserts Defendants violated § 3617 by interfering with his right to make his unit available to a family with children.[136] To support this, Plaintiffs point out, based on meeting minutes, that at the September 29, 2017, meeting, Acuff, Jablonowski, and Haile voted, over Harlan's dissent, to impose a daily $100 fine against Harlan for renting to the Treeces, to pursue the Treeces' eviction, and to assess legal fees associated with the eviction against Harlan.[137] The PCOA then formally fined Harlan for violating the condominium declaration, rules, regulations, and by-laws and placed a lien against his unit.[138] Defendants have not demonstrated the inadequacy of this evidence. A disputed issue of fact exists with respect to whether Defendants' imposition of daily fines and a lien on Harlan for not evicting the Treeces was unlawful "interference" with Harlan's rights under § 3617.[139]

This disputed issue of fact also affects whether the Defendants unlawfully interfered with the Treeces' rights under § 3617.[140] Plaintiffs have called the Court's attention to several additional disputed issues of material fact precluding summary judgment. First, the parties dispute whether Defendants enacted a more restrictive

---

[135] *Bloch v. Frischholz*, 587 F.3d 771, 782 (7th Cir. 2009) (emphasis in original).
[136] R. Doc. 16 ¶¶ 78–79.
[137] R. Doc. 128-1, at 8–9 (citing R. Doc. 128-19, at 1–3).
[138] *Id.* (citing R. Doc. 128-23; R. Doc. 128-24).
[139] *See Arnal v. Aspen View Condo. Ass'n, Inc.*, 226 F. Supp. 3d 1177, 1188 (D. Colo. 2016).
[140] *Bloch*, 587 F.3d at 782. To the extent Defendants argue they never made a statement directly to the Treeces, Plaintiffs raise a disputed issue of fact over that point by directing the Court's attention to a meeting between Acuff, Haile, and the Treeces in November, 2017, in which Defendants told the Plaintiffs to move out. R. Doc. 128-1, at 14.

occupancy limit to force the Treeces to leave. Defendants state, based on the declarations and verified answers to interrogatories of Acuff, Jablonowski, and Haile, it is an undisputed fact the occupancy rule was never formally changed and that the rule was not intended to apply to the Treeces.[141] Plaintiffs dispute this and point to emails among the Defendants stating the rule was adopted and to be given immediate effect.[142]

In addition, as in the *Petty* case,[143] Plaintiffs include in their statement of material facts in dispute whether Defendants changed the lock on a common storage shed to deny the Treeces' access.[144] To support this, Plaintiffs point to emails in which Defendants say renters are not allowed to use the shed and the renters' property should be moved out of the shed.[145]

Because of these disputed issues of material fact, summary judgment is not warranted on Plaintiff's § 3617 claim.

## IV.  Defendants Haile, Acuff, and Jablonowski May Be Held Personally Liable

Both § 3604 and § 3617 require that, for an individual to be personally liable for an alleged violation, he or she must have had the power and authority to effectuate the alleged unlawful act.[146] Haile, Acuff, and Jablonowski argue they cannot not be held personally liable in this case because Plaintiffs cannot meet this element of their §§ 3604 and 3617 claims, as only the PCOA had the power and authority to effectuate the acts Plaintiffs claim violated the FHA.[147]

---

[141] R. Doc. 117-1 ¶ 8 (citing R. Doc. 117-3, at 2, 71–72, 81–82, 92).
[142] R. Doc. 128-1, at 4–5 (citing R. Doc. 128-10).
[143] *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 731 (S.D. Tex. 2010).
[144] R. Doc. 128-1, at 13 (citing R. Doc. 128-21, at 1–2).
[145] R. Doc. 128-21, at 2–4.
[146] *Meadowbriar Home for Children v. Gunn*, 81 F.3d 521, 531 (5th Cir. 1996).
[147] R. Doc. 117-2, at 19.

"[A]n action brought [under the FHA] for compensation by a victim of housing discrimination is, in effect, a tort action."[148] Under traditional vicarious liability rules, "in the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents."[149] In *Meyer v. Holley*, the Supreme Court held owners and officers of a corporation cannot be held liable for the corporation's FHA violations "if they did not direct or authorize, and were otherwise not involved in, the unlawful discriminatory acts."[150]

*Meyer* does not address, however, the personal liability of an individual acting on behalf of a corporation when the individual personally performs discriminatory acts.[151] In *Dillon v. AFBIC Dev. Corp.*, the vice president and sole shareholder of a corporation acting as a real estate agent assisted a seller in a racially motivated refusal to sell a home to a Black couple.[152] The Fifth Circuit held the vice president and sole shareholder individually liable, not because he was an executive and owner, but instead because his "own conduct violated the federal antidiscrimination statutes."[153]

In line with *Dillon*, other circuits have imposed individual liability on members of a homeowner's association for their personal discriminatory actions that violate the Fair Housing Act. For example, in *Revock v. Cowpet Bay West Condominium Ass'n*, the Third Circuit held a condominium association member could be personally liable for posting derogatory remarks and threatening fees and liens against a resident who needed a

---

[148] *Meyer v. Holley*, 537 U.S. 280, 285 (2003) (citing *Curtis v. Loether*, 415 U.S. 189, 195–96 (1974)).
[149] *Id.* at 286.
[150] *Id.* at 284.
[151] *Chavez v. Aber*, 122 F. Supp. 3d 581, 594 (W.D. Tex. 2015) ("The decision in Meyer, however, in no way stands for the proposition that the FHA does not impose personal liability on a corporate officer with fault for that officer's own unlawful conduct.").
[152] 597 F.2d 556, 562 (5th Cir. 1979).
[153] *Id.*

support animal.[154] Courts also have imposed individual liability on members of an association for their participation in a vote, or some other act or omission, that authorizes the association to violate the FHA. For example, in *Sabal Palm Condos of Pine Island Ridge Ass'n, Inc. v. Fischer*, the District Court for the Southern District of Florida held members of a condominium association individually liable under the FHA for their participation in board decisions to impose fines on a plaintiff until his service dog was removed from the condominium.[155]

In this case, Plaintiffs point to both undisputed and disputed facts that could establish Defendants' individual liability for voting to engage the PCOA in discriminatory actions. Plaintiffs point out it is undisputed that Acuff, Jablonowski, and Haile voted to authorize the PCOA's change of the per square foot occupancy rule, its pursuit of the Treeces' eviction, and its imposition of fines and a lien on Harlan.[156] Plaintiffs include in their statement of material facts in dispute that Defendants voted to change the lock on a common storage shed to deny the Treeces access to the shed,[157] supporting this with emails between Defendants in which Defendants say renters are not allowed to use the shed and the renters' property should be moved out of the shed.[158] Plaintiffs also assert Acuff, Jablonowski, and Haile voted to install a camera in the Building's common stairwell to monitor the Treeces' unit, supporting this with Defendants' emails and Acuff's answers to interrogatories stating they voted to install the camera to verify the number of children in the Treeces' family.[159]

---

[154] 853 F.3d 96, 114–16 (3rd Cir. 2017).
[155] 6 F. Supp. 3d 1272, 1293-94 (S.D. Fla. 2014); *Dillon v. AFBIC Dev. Corp.*, 597 F.2d 556 (5th Cir. 1979).
[156] R. Doc. 16 ¶¶ 48–51; R.Doc. 49 ¶¶ 48–51.
[157] R. Doc. 128-1, at 13 (citing R. Doc. 128-21, at 1–2).
[158] R. Doc. 128-21, at 2–4.
[159] R. Doc. 128-1, at 12 (citing R. Doc. 128-19, at 2; R. Doc. 117-3, at 72).

Finally, Plaintiffs raise disputed issues of material fact regarding whether Acuff and Haile committed individual discriminatory acts. Plaintiffs assert Acuff and Haile made discriminatory statements during their meeting with the Treeces in November 2017.[160] According to Dwayne Treece's answers to interrogatories[161] and declaration,[162] during this November, 2017, meeting, "Acuff and Haile encouraged the Treeces to move out, informed them that Acuff was recording and monitoring sounds coming from their unit, that the PCOA was taking steps to cause their eviction, and that the PCOA was fining Harlan because of their occupancy."[163] These statements, if proven, could give rise to personal liability.

Defendants Acuff, Jablonowski, and Haile are not entitled to summary judgment on their personal liability.

## <u>CONCLUSION</u>

**IT IS ORDERED**, for the foregoing reasons, that Defendants' motion for summary judgment that they are exempt from liability under § 3603(b)(2) is **DENIED**, and summary judgment is **GRANTED** in favor of Plaintiffs that the § 3603(b)(2) exemption does not apply.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment that they are not liable to Plaintiffs under § 3604(c) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment that they are not liable to Plaintiffs under § 3617 is **DENIED**.[164]

---

[160] *Id.* at 3; R. Doc. 117-3, at 37.
[161] R. Doc. 117-3, at 37.
[162] R. Doc. 128-2.
[163] R. Doc. 128-1, at 3.
[164] Plaintiffs' claims under § 3604(a), (b), and (d) also remain.

**IT IS FURTHER ORDERED** that Defendants Acuff, Jablonowski, and Haile's motion for summary judgment that they are not personally liable to Plaintiffs is **DENIED**.

New Orleans, Louisiana, this 2nd day of December, 2019.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**