# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DWAYNE TREECE, ET AL.<br>    Plaintiffs | CIVIL ACTION |
| VERSUS | NO. 17-10153 |
| PERRIER CONDOMINIUM OWNERS<br>ASSOCIATION, INC., ET AL.,<br>    Defendants | SECTION: "E" |

## ORDER AND REASONS

Before the Court is a motion for partial summary judgment filed by Defendant Hannah Haile.[1] Plaintiffs Dwayne and Phallon Treece oppose the motion.[2] Haile filed a reply.[3] The Treeces filed a surreply.[4] For the following reasons, Haile's motion for partial summary judgment is **DENIED**.

## BACKGROUND

In late spring of 2017, Defendant Hannah Haile sought to rent out her two bedroom unit in the Perrier Condominium.[5] In May of that year, Plaintiffs Dwayne and Phallon Treece showed interest in Haile's unit, and Dwayne viewed it with his son.[6] Over the next few months Haile and the Treeces communicated about the availability of the unit, but in August, the Treeces leased a different unit in the Perrier Condominium from Plaintiff Harlan.[7] The Treeces allege that, in her communications with them, Haile violated the Fair Housing Act by misrepresenting the availability of her unit, refusing to negotiate, and making her unit unavailable because of their familial status.[8] Haile files the

---

[1] R. Doc. 211.
[2] R. Doc. 275.
[3] R. Doc. 291.
[4] R. Doc. 297.
[5] R. Doc. 211-1, at 11; R. Doc. 275, at 3.
[6] R. Doc. 211-1, at 11; R. Doc. 275, at 3.
[7] R. Doc. 16 ¶ 34; R. Doc. 49 ¶ 34.
[8] R. Doc. 16 ¶¶ 74–75.

1

instant motion for partial summary judgment arguing the Treeces have not presented any evidence to support these claims.

## **SUMMARY JUDGEMENT STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] "An issue is material if its resolution could affect the outcome of the action."[10] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[11] All reasonable inferences are drawn in favor of the nonmoving party.[12] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[13]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[14] If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's

---

[9] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[10] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[11] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[12] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[13] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[14] *Celtic Marine Corp. v. James C. Justice Cos.*, 760 F.3d 477, 481 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 323).

claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[15]

When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[16] When proceeding under the second option, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[17] The burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[18] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[19] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the

---

[15] *Celotex*, 477 U.S. at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322–24, and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[16] *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[17] *Celotex*, 477 U.S. at 332–33.
[18] *Id.*
[19] *Id.* at 332–33 & n.3.

moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[20]

"[U]nsubstantiated assertions are not competent summary judgment evidence."[21] The opposing party must "identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[22]

## **FACTS**

The following facts are undisputed. In the spring and summer of 2017, the Treeces sought to rent a residence for their family of six.[23] They considered two potential condominium units in the Perrier Condominium.[24] The Perrier Condominium contains four units that are separately owned by Defendants Acuff, Haile, and Jablonowski and Plaintiff Harlan.[25] In May 2017, Dwayne Treece viewed Haile's unit and expressed to Haile he wished to rent the unit in August 2017.[26] Haile informed Dwayne she wanted to fill the unit immediately.[27] Haile provided Dwayne with a rental application the Treeces never returned.[28] On June 19, 2017, Haile leased her unit to another tenant, Eric Wilk.[29]

Wilk, at some point in July, informed Haile that he was closing on a new home and was going to move out in late August.[30] On July 17th, Haile texted Wilk, "Do you have a

---

[20] *Id.*; *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).
[21] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324).
[22] *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[23] R. Doc. 16, ¶ 20; R. Doc. 49, ¶ 20.
[24] R. Doc. 16, ¶¶ 21–27; R. Doc. 49, ¶¶ 21–27.
[25] R. Doc. 16, ¶¶ 12–16; R. Doc. 49, ¶¶ 12–16.
[26] R. Doc. 211-1, at 8; R. Doc. 275-1, at 1.
[27] R. Doc. 211-1, at 8; R. Doc. 275-1, at 1.
[28] R. Doc. 211-1, at 8; R. Doc. 275-1, at 1.
[29] R. Doc. 211-1, at 8; R. Doc. 275-1, at 2.
[30] R. Doc. 275-7, at 74:18–19.

set closing date for 8-23? If so I would like to make it 8-22 as I leave town on 8-23 . . . and have someone that want to take that month."[31] Later on July 17th, she texted Wilk, "Well, never mind. They found other housing."[32] Then, on July 21st, Haile texted Wilk, "What is your end date for August? Not worried about sending PayPal but have a prior viewing that ended up wanting to move in. So I was right in saying somebody else wanted it."[33]

On July 25th, Phallon Treece texted Haile about her unit, and Haile responded, "Current tenant is moving out aug 22 and got a girl that needs a month."[34] On August 2, 2017, Dwayne emailed Haile about the status of Wilk, the current tenant in the unit, and Haile responded, "new extension goes through 9/28."[35] Haile was referring to Wilk in this email.[36] On August 7th, five days after Dwayne contacted Haile and she told him "[Wilk's] extension goes through 9/28,"[37] two women applied to rent Haile's unit after Wilk moved out.[38] Wilk moved out of the unit on August 22nd, after closing on his new home.[39] The two women who applied on August 7th to live in Haile's unit moved in shortly thereafter.[40]

The Treeces ultimately moved into Harlan's unit in the Perrier Condominium on August 16, 2017.[41] On that day, Haile, in response to an email from Harlan informing the other unit owners of the Treece's move, said, "This renter, Dwayne, had actually contact [sic] me in regards to renting my unit the very first week I posted it. He came to look with

---

[31] *Id.* at 75:19–22.
[32] *Id.* at 76:13–14.
[33] *Id.* at 78:2–7.
[34] R. Doc. 275-3, at 3.
[35] R. Doc. 275-9, at 1.
[36] R. Doc. 275-5, at 175:23.
[37] R. Doc. 275-9, at 1.
[38] R. Doc. 211-1, at 8; R. Doc. 275-1, at 2; R. Doc. 275-11; R. Doc. 275-10.
[39] R. Doc. 211-1, at 8; R. Doc. 275-1, at 2; R. Doc. 275-7, at 24:14–15.
[40] R. Doc. 275-5, at 102:21–103:6.
[41] R. Doc. 16 ¶ 34; R. Doc. 49 ¶ 34.

his youngest child. He is a nice guy but I decided the condo was not the best fit as they have 3 small children."[42]

The Treeces failed to pay all of the rent owed to their prior landlord, Ethel Kidd Realty.[43] The Treeces application to another rental unit on Valmont Street in August 2017 was denied because of issues with their rental history.[44]

The following material facts are in dispute. Haile claims she was being truthful in her August 2nd email to Dwayne, in which she said Wilk's lease had extended to September 28th, because she extended Wilk's lease through September to give him additional time to move.[45] Wilk, however, testified he informed Haile on July 17, 2017—twelve days before she told Dwayne "new extension goes through 9/28"—that he was closing on a new home and was going to move out on August 23, 2017.[46] Wilk stated he never extended his lease into September because he closed on his new home in August.[47] The parties also dispute whether, on August 2nd, Haile had another person lined up to occupy her unit from the time Wilk moved out until September 28.[48] Lastly, the parties dispute whether the Treeces were involuntarily evicted multiple times in the past.[49]

## **LAW AND ANALYSIS**

The Fair Housing Act (FHA)[50] "prohibits discrimination in the rental or sale of a dwelling based on certain protected characteristics."[51] The statute "reflects 'the policy of the United States to provide within constitutional limitations, for fair housing

---

[42] R. Doc. 16 ¶ 37; R. Doc. 49 ¶ 34; R. Doc. 275-12, at 1.
[43] R. Doc. 211-1, at 9; R. Doc. 275-1, at 4.
[44] R. Doc. 211-1, at 9; R. Doc. 275-1, at 4.
[45] R. Doc. 275-5, at 90:13–14; R. Doc. 275-5, at 175:22–25.
[46] R. Doc. 275-7, at 75:3, 15–16.
[47] *Id.* at 19:14–15.
[48] R. Doc. 211-1, at 8; R. Doc 275-1, at 2.
[49] R. Doc. 211-1, at 9; R. Doc. 275-1, at 4.
[50] 42 U.S.C. §§ 3601–3631.
[51] *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

throughout the United States.'"[52] "The FHA, as originally enacted in 1968, prohibited discrimination based on race, color, religion, or national origin."[53] "In 1988, Congress extended coverage to persons with handicaps and also prohibited 'familial status' discrimination, i.e., discrimination against parents or other custodial persons domiciled with children under the age of 18."[54] The Supreme Court has instructed courts to give the FHA a "broad and inclusive" interpretation.[55] The instant motion concerns two provisions of the FHA, 42 U.S.C. § 3604(a) and (d).

42 U.S.C. § 3604(a) provides:

It is unlawful to refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling of any person because of race, color, religion, sex, familial status or national origin.

The Department of Housing and Urban Development regulations interpreting the FHA explain that a housing provider violates §3604(a) by "discouraging any person from inspecting, purchasing or renting a dwelling because of" their protected status.[56]

42 U.S.C. § 3604(d) provides it is unlawful "to represent to any person because of . . . familial status . . . that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available."[57] The Supreme Court has held § 3604(d) "establishes an enforceable right of 'any person' to truthful information concerning the availability of housing."[58]

---

[52] *Id.* (citing 42 U.S.C. § 3604).
[53] *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728 n.1 (1995).
[54] *Id.* (citing 42 U.S.C. § 3602(k)).
[55] *City of Edmonds*, 514 U.S. at 731 (citing *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972)).
[56] 24 C.F.R. § 100.70.
[57] 42 U.S.C. § 3604(d).
[58] *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 364 (1982).

7

As another section of this court has explained, "circuit courts have extended an individual's right under §3604(d) to truthful information about housing availability to §3604(a) and (b) of the FHA."[59] Misrepresentations of fact concerning the availability of housing that give rise to liability under § 3604(d) also give rise to liability under §3604(a) because those misrepresentations "otherwise make unavailable or deny" housing to a person because of their membership in a protected class.

In *Darby v. Heather Ridge*, the District Court for the Eastern District of Michigan held a housing provider's "dilatory tactics, slight misrepresentations of fact, and subtle behavior intended to frustrate plaintiffs' attempts to secure housing" such as making the plaintiffs wait over an hour before being assisted, misstatements regarding the use of the swimming pool by the children, and the overall unfriendly and unwelcoming attitude towards the plaintiffs were sufficient evidence of a § 3604 violation to defeat the provider's motion for summary judgment.[60] The court stated, "when subtle or discrete discrimination is alleged, a fine line separates discrimination from lawful behavior . . . [and] questions of interpretation [about that line] are best resolved by the trier of fact.[61]

The Treeces' allege Haile violated § 3604(a) and (d) by misrepresenting the availability of her unit to them because of their familial status. Because those alleged misrepresentations can give rise to liability under both § 3604(a) and (d), they will be treated together. Haile argues she is entitled to partial summary judgment on these claims against her because (1) the Treeces never submitted an application to rent her unit;[62] (2)

---

[59] *Danenhower v. Dorsey*, 1997 WL 469960 at *3 (E.D. La. 1997) (citing *United States v. Balistrieri*, 981 F.2d 916 (7th Cir. 1992); *Village of Bellwood v. Dwivedi*, 895 F.2d 1521 (7th Cir. 1990); *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898 (2d Cir. 1993)).
[60] *Darby v. Heather Ridge*, 806 F. Supp. 170, 175 (E.D. Mich. 1992).
[61] *Id.*
[62] R. Doc. 211-1, at 13–15.

8

even if the Treeces had applied, she would not have rented her unit to them based on legitimate, nondiscriminatory reasons such as the Treeces' prior rental history;[63] (3) all statements she made to the Treeces were true;[64] and (4) the undisputed facts show she negotiated with the Treeces by giving them an application, letting them view the apartment, and timely responding to their emails.[65] Haile has not shown by these arguments that she is entitled to summary judgment.

First, although it is undisputed the Treeces did not submit an application to rent Haile's unit, the submittal of an application is not necessary to establish a § 3604(a) claim. In *Havens Realty Corp. v. Coleman*, the Supreme Court held a "tester" plaintiff, who had no intention of renting or purchasing an apartment and did not submit an application to do so, still had a legal right to truthful information concerning housing availability under § 3604.[66]

Second, even if true, the Treeces' alleged disqualifying characteristics likewise do not deprive them of their broad right to truthful information regarding the availability of housing. Any discriminatory, pre-application "behavior intended to frustrate plaintiffs' attempts to secure housing" violates § 3604.[67]

Third, there are disputed issues of material fact regarding whether the information Haile gave the Treeces during their communications was true. The parties dispute whether Haile was being truthful when she told Dwayne Treece that Wilk's "new extension goes through 9/28."[68] Haile claims she extended Wilk's lease through

---

[63] *Id.* at 20–21.
[64] *Id.* at 11–12.
[65] *Id.* at 15–16.
[66] *Danenhower v. Dorsey*, 1997 WL 469960 at *2 (E.D. La. 1997) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 366 (1984)).
[67] *Darby v. Heather Ridge*, 806 F. Supp. 170, 175 (E.D. Mich. 1992).
[68] R. Doc. 275-9, at 1.

September to give him additional time to move and that he only ended up moving out earlier because of the excessive noise coming from the unit occupied by the Treeces.[69] Wilk, however, claims he informed Haile on July 21, 2017—twelve days before she told Dwayne "new extension goes through 9/28"—that he was closing on a new home and was going to move out on August 23, 2017.[70] Wilk testified he never extended his lease beyond August 23rd.[71]

Further, even based on just the undisputed facts in this case, a jury could find Haile misrepresented the availability of her unit to the Treeces. It is undisputed that Haile told Phallon Treece on July 25, 2017, "[Wilk] is moving out aug 22 and got a girl that needs a month."[72] Then, she told Dwayne on August 2, 2017 "[Wilk's] new extension goes through 9/28."[73] Then, on August 7, 2017, she accepted applications from two women who moved into her unit shortly after Wilk moved out.[74] Based on this timeline of the undisputed facts—particularly Haile's acceptance of applications from two women five days after telling Dwayne Treece "new extension goes through 9/28"—a jury could conclude Haile misrepresented the availability of her unit to the Treeces. Moreover, the Treeces have pointed to direct evidence that Haile purposefully discriminated against them based on their familial status. In response to an email from Harlan informing the other unit owners that the Treeces moved in to Unit 6036, Hail said, "This renter, Dwayne, had actually contact [sic] me in regards to renting my unit the very first week I posted it. He came to

---

[69] R. Doc. 275-5, at 87:7–10, 90:10–15.
[70] R. Doc. 275-7, at 75:15–17.
[71] *Id.* at 20:21–21:2.
[72] R. Doc. 275-3, at 3.
[73] R. Doc. 275-9, at 1.
[74] R. Doc. 275-5, at 102:21–103:6.

look with his youngest child. He is a nice guy but I decided the condo was not the best fit as they have 3 small children."[75]

These disputed, and even undisputed, "slight misrepresentations of fact[] and subtle behaviors[s]" could permit a jury to find Haile violated § 3604.[76] "[W]hen subtle or discrete discrimination is alleged, a fine line separates discrimination from lawful behavior . . . [and these] questions of interpretation are best resolved by the trier of fact."[77] As a result, Haile is not entitled to summary judgment that she did not misrepresent the availability of her unit to the Treeces.

Finally, the same disputed issues of material fact defeat Haile's claim that she engaged in negotiations with the Treeces. Haile did negotiate with the Treeces to some extent by allowing them to inspect her unit, providing them with an application, and communicating with them about the availability of the unit. Nevertheless, if she misrepresented the unit's availability during those communications, she may have cut off other avenues of negotiation. Accordingly, Haile is not entitled to summary judgment that she did not refuse to negotiate with the Treeces because of their familial status.

## CONCLUSION

**IT IS ORDERED,** for the foregoing reasons, that Defendant Haile's motion for partial summary judgment that she is not liable to Plaintiff Dwayne and Phallon Treece under § 3604(a) and (d) is **DENIED**.

**New Orleans, Louisiana, this 14th day of February, 2020.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[75] R. Doc. 16 ¶ 37; R. Doc. 49 ¶ 34; R. Doc. 275-12, at 1.
[76] *Darby v. Heather Ridge*, 806 F. Supp. 170, 175 (E.D. Mich. 1992).
[77] *Id.*