## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DWAYNE TREECE, ET AL.**                        CIVIL ACTION
    **Plaintiffs**

**VERSUS**                                       NO. 17-10153

**PERRIER CONDOMINIUM OWNERS**                   SECTION: "E"
**ASSOCIATION, INC., ET AL.,**
    **Defendants**

## ORDER AND REASONS

Before the Court is a motion to disqualify Ms. Cashauna Hill as counsel for Plaintiffs Dwayne and Phallon Treece filed by Defendants Hannah Haile, Perrier Condominium Owners Association, Inc., Katherine Acuff, and Christopher Jablonowski.[1] Plaintiffs oppose the motion.[2] Defendants filed a reply.[3] For the following reasons, Defendants' motion to disqualify counsel is **GRANTED**.

## BACKGROUND

In late spring of 2017, Defendant Hannah Haile sought to rent her two bedroom unit in the Perrier Condominium.[4] In May of that year, Plaintiffs Dwayne and Phallon Treece showed interest in Haile's unit, and Dwayne viewed it with his son.[5] Over the next few months Haile and the Treeces communicated about the availability of the unit, but in August, the Treeces leased a different unit in the Perrier Condominium from Plaintiff Harlan.[6] The Treeces allege that, in her communications with them, Haile violated the Fair Housing Act, specifically 42 U.S.C. §§ 3604(a) and (d), by misrepresenting the

[1] R. Doc. 386.
[2] R. Doc. 390.
[3] R. Doc. 393.
[4] R. Doc. 331 at 1.
[5] *Id.*
[6] R. Doc. 16 ¶ 34; R. Doc. 49 ¶ 34.

availability of her unit, refusing to negotiate, and making her unit unavailable because of their familial status.[7]

Since this case was first filed in 2017, the Treeces have been represented by Ms. Elizabeth Owen and Mr. Peter Theis, attorneys at the Louisiana Fair Housing Action Center ("LaFHAC"), and Mr. John Adcock, a cooperating attorney with LaFHAC.[8] Mr. Theis has since transitioned out of his role as attorney at LaFHAC and withdrew as counsel for the Treeces on August 9, 2021.[9] Similarly, on July 8, 2021, Ms. Owen was replaced as counsel for the Treeces by Ms. Cashauna Hill, Executive Director of LaFHAC.[10] The Treeces are currently represented by Mr. Adcock and Ms. Hill.

One element of the Treeces' §§ 3604(a) and (d) claims against Haile is discriminatory animus.[11] As part of her defense, Haile plans to show at trial that she had no discriminatory animus because she "understands fair housing principles and supports the fair housing community."[12] To corroborate her testimony, Haile plans to call Ms. Hill to testify about Haile's work with LaFHAC, and Haile's work with Ms. Hill in particular, as LaFHAC's insurance agent from 2008 or 2009 to 2018, during which time the two discussed insurance proposals for LaFHAC's work, including those for familial status testers.[13] To that end, Haile listed Ms. Hill as a potential witness on her witness list on

---

[7] R. Doc. 16 ¶¶ 74–75.

[8] R. Doc. 390 at 1 n.1. LaFHAC was previously known as the Greater New Orleans Fair Housing Action Center before it changed its name to the Louisiana Fair Housing Action Center in 2020. *Id.*

[9] R. Doc. 388; R. Doc. 385; R. Doc. 390 at 7.

[10] R. Doc. 383; R. Doc. 382.

[11] *See* 42 U.S.C. §§ 3604(a), (d); R. Doc. 386-1 at 5.

[12] R. Doc. 386-1 at 5.

[13] *Id.*; R. Doc. 376 at 2-3; R. Doc. 181 at 4; R. Doc. 196 at 4. Familial status testers "are individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful . . . practices" concerning families. *Cf. Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982). The Supreme Court has approved of using testers in Fair Housing Act cases. *See id.* at 373-74.

December 17, 2019, and again listed her on her amended witness list on January 3, 2020.[14] When the Treeces moved to have Ms. Hill substituted for Ms. Owen on July 7, 2021—eighteen months after Ms. Hill was first listed as a witness for Haile—the Treeces did not disclose to the Court Ms. Hill's status as a listed witness in this case.[15]

Defendants now move to disqualify Ms. Hill as counsel for the Treeces.

## LAW AND ANALYSIS

"Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law."[16] As such, and because disqualification of an attorney is a harsh and disruptive remedy, the party seeking disqualification bears the burden of proving a conflict of interest requiring disqualification.[17] Motions to disqualify in the Fifth Circuit are governed by state and national ethical standards.[18] In determining disqualification, at least four ethical canons are relevant: (1) the Local Rules for the Eastern District of Louisiana ("Local Rules"); (2) the American Bar Association's Model Rules of Professional Conduct ("Model Rules"); (3) the American Bar Association's Model Code of Professional Conduct ("Model Code"); and (4) the Louisiana Rules of Professional Conduct ("Louisiana Rules").[19] However, "[t]he rule of disqualification is not mechanically applied in this circuit."[20] A court "must weigh the relative merits of each of the various competing disqualification rules as [it] proceed[s] through each successive step of [the] analysis."[21] "All the facts particular to a

---

[14] R. Doc. 181 at 4; R. Doc. 196 at 4.
[15] R. Doc. 382.
[16] *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992); *Sumpter v. Hungerford*, No. 12-717, 2013 WL 2181296 at *5 (E.D. La. May 20, 2013).
[17] *United States v. Decay*, 406 F. Supp. 2d 679, 683 (E.D. La. 2005) (citing *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1316 (5th Cir. 1995)).
[18] *Am. Airlines*, 972 F.2d at 610.
[19] *See Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001).
[20] *Church of Scientology of California v. McLean*, 615 F.2d 691, 693 (5th Cir. 1980).
[21] *U.S. Fire Ins. Co.*, 50 F.3d at 1312.

case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights."[22]

In considering a motion to disqualify, in addition to the formal rules, the court views the rules in light of the litigant's rights and public interest considering "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case."[23]

## I.    Local Rules, Louisiana Rule 3.7, and Model Rule 3.7

The Local Rules "are the most immediate source of guidance for the district court."[24] The Local Rules incorporate the Louisiana Rules.[25] Louisiana Rule 3.7 is identical to Rule 3.7 of the Model Rules. Rule 3.7 provides in relevant part:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>     (1) the testimony relates to an uncontested issue;
>     (2) the testimony relates to the nature and value of legal services rendered in the case; or
>     (3) disqualification of the lawyer would work substantial hardship on the client.[26]

"A necessary witness is one whose testimony is relevant, material, and unobtainable elsewhere."[27]

Defendants argue Ms. Hill is a necessary witness in Haile's defense. They intend to prove Haile had no discriminatory animus by showing "she has supported the fair housing

---

[22] *Id.* at 1314.
[23] *Horaist*, 255 F.3d at 266.
[24] *U.S. Fire Ins. Co.*, 50 F.3d at 1312.
[25] LR 83.2.3.
[26] La. Rules of Pro. Conduct r. 3.7 (2021); Model Rules of Pro. Conduct r. 3.7 (Am. Bar Ass'n 2020).
[27] *Painter v. Suire*, No. 12-511, 2014 WL 3858510, at *2 (E.D. La. Aug. 5, 2014).

effort and community for years" and "understands fair housing principles."[28] Part of this defense is premised on Haile's work as LaFHAC's insurance agent for roughly a decade. She worked with LaFHAC to ensure all its risks were covered, including familial status testers. Haile argues this work is relevant because it makes it less likely she would discriminate.[29] Haile herself will testify that she was "an agent and friend to fair housing advocates"[30] She will call Ms. Hill to corroborate Haile's work with and support of LaFHAC, "seen through the lens of her experience as a fair housing advocate, which could include her knowledge of HUD guidelines and her experience with HUD."[31] They argue Ms. Hill is the only person who can corroborate Haile's work and familiarity with LaFHAC.[32]

The Treeces argue Ms. Hill is not a necessary witness because her testimony would be irrelevant. They admit Ms. Hill and Haile worked together several times but argue these interactions were short, few, and only insurance-related, such that Ms. Hill lacks any personal knowledge of Haile's understanding of fair housing.[33] The Treeces further contend that any general understanding of fair housing principles Haile may have is irrelevant to the specific intent she had when dealing with the Treeces.[34] Finally, they argue it would be a hardship to deprive the Treeces of the counsel of a practiced fair housing attorney like Ms. Hill with valuable trial experience from the past sixteen years,

---

[28] R. Doc. 386-1 at 5, 8.
[29] R. Doc. 393 at 4.
[30] *Id.* at 5.
[31] *Id.* at 6, n.2.
[32] *Id.* at 5; R. Doc. 386-1 at 8.
[33] R. Doc. 390 at 4-5.
[34] *Id.* at 6, 8-10. The Treeces also argue that Ms. Hill cannot explain HUD guidelines or fair housing principles because the guidelines themselves are the best evidence and Ms. Hill is not listed as an expert witness. *Id.* at 6-7. Defendants, however, do not intend to have Ms. Hill explain fair housing principles, just to testify as to her experience with Haile as someone who understands those principles herself. R. Doc. 393, at 6, n.2.

and Defendants' motion should be scrutinized as a tactic to delay, harass, and deprive the Treeces of their choice of counsel.[35]

Testimony is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action.[36] For evidence to have "any tendency" is a liberal standard, and even evidence that is "not very probative" is relevant.[37] For a fact to be "of consequence," under the substantive law of the case, the "proposition to be proved must be . . . probative of a matter that is in issue."[38]

Under the Fair Housing Act, plaintiffs must show discriminatory intent or effect.[39] Haile plans to call Ms. Hill to testify as to Haile's discriminatory intent. "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."[40] Even if slight, the fact that someone supports fair housing advocates and understands fair housing principles is certainly probative of how likely someone is to intentionally discriminate, a matter at issue in this case. Thus, Ms. Hill's proposed testimony meets the low bar of relevance.

Evidence is "material" if it has "some logical connection with the consequential facts" or if it is "[o]f such a nature that knowledge of [it] would affect a person's decision-making."[41] Ms. Hill's proposed testimony will speak to Haile's intent in interacting with the Treeces, a consequential issue in this case. Part of the reason Haile wishes to call Ms.

---

[35] R. Doc. 390 at 3-4; 7-8.
[36] Fed. R. Evid. 401.
[37] *See Echeverry v. Jazz Casino Co.*, 988 F.3d 221, 235 (5th Cir. 2021).
[38] *United States v. Hall*, 653 F.3d 1002, 1005 (5th Cir. 1981).
[39] *See* 42 U.S.C. §§ 3604(a), (d).
[40] *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).
[41] *Material*, Black's Law Dictionary (11th ed. 2019).

Hill is because of the stronger effect her testimony will have on the jury as a fair housing advocate compared to self-serving testimony from Haile herself.[42] Testimony of Haile's support for fair housing and knowledge of fair housing principles, coming from an experienced fair housing advocate, could have an impact on the jury. Thus, Ms. Hill's proposed testimony is material.

Ms. Hill's testimony, however, must be unobtainable from elsewhere. Numerous courts have held that mere corroboration of testimony is duplicative and makes the witness unnecessary.[43] This is the case even if there is only one other witness able to testify as to the facts and if that sole other witness is the party seeking to have the lawyer testify.[44] In this case, Defendants admit that "Hanna [Haile] will provide this testimony" about her work with LaFHAC and support of fair housing and that Ms. Hill will only corroborate her.[45] Because Ms. Hill's testimony is available elsewhere, she is not a necessary witness under Rule 3.7.

For these reasons, the Local Rules, Louisiana Rule 3.7, and Model Rule 3.7 weigh against disqualifying Ms. Hill.

## II.  Model Code

Disciplinary Rule 5-101(B) of the Model Code states:

A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

---

[42] R. Doc. 393 at 6, n.2.

[43] *See, e.g.*, *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 267 (5th Cir. 2001); *Stonecoat of Tex., LLC v. Procal Stone Design, LLC*, No. 17-303, 2019 WL 9899506, at *11 (E.D. Tex. Mar. 8, 2019); *Domain Prot., LLC v. Sea Wasp, LLC*, No. 18-792, 2019 WL 6131298, at *8 (E.D. Tex. Nov. 19, 2019); *McNeil v. Sullivan*, No. 17-481, 2020 WL 7342397, at *4 (M.D. La. Dec. 14, 2020).

[44] *McNeil*, 2020 WL 7342397, at *4.

[45] R. Doc. 386 at 1; R. Doc. 386-1 at 8; R. Doc. 393 at 5.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.[46]

The Model Code is similar in substance to the Model Rules, but it omits the requirement that the lawyer be a "necessary" witness. In fact, the Fifth Circuit has stated that the Model Code prohibits a lawyer from acting as a "material witness."[47] The definition of "material witness" is broad, including anyone "who can testify about matters having some logical connection with the consequential facts."[48] This definition encompasses most witnesses. Accordingly, the Model Code broadly states that a lawyer must not accept employment when the lawyer is *likely* to be a witness, with a few exceptions. The first main consideration then is whether the lawyer "will likely be a witness on a contested issue."[49]

---

[46] Model Code of Pro. Resp. DR 5-101(B) (Am. Bar. Ass'n 1980).

[47] *Draganescu v. First Nat'l Bank of Hollywood*, 502 F.2d 550, 553 (5th Cir. 1974) (interpreting the relevant Florida disciplinary rule, which was identical to Rule 101(B) of the Model Code at the time); *cf. also Spencer v. BMW of N. Am., LLC*, No. 14-869, 2015 WL 3936211, at *3 (W.D. Tex. June 26, 2015) (differentiating between being a material witness and being a necessary witness).

[48] *Witness*, Black's Law Dictionary (11th ed. 2019).

[49] Model Code of Pro. Resp. EC 5-10; *see also Barry v. Medtronic, Inc.*, No. 14-104, 2015 WL 12915556, at *8 (E.D. Tex. Aug. 14, 2015) (emphasis added) ("[T]he important considerations are the *potential* for juror confusion and prejudice to [the opposing party]. This problem is recognized in the Model Code."). Ethical Consideration 5-10 also states, "It is not objectionable for a lawyer who is a potential witness to be an advocate if it is unlikely that he will be called as a witness because his testimony would be merely cumulative or if his testimony will relate only to an uncontested issue." This would seem to raise the same issue of cumulative, corroborative testimony as under the Model Rules. However, the focus is, rather, again on the *likelihood* the lawyer will be called. This Ethical Consideration states that a lawyer may enroll as counsel when it is "*unlikely* that he will be called" for various reasons, such as if the issue is uncontested or there are other witnesses to testify as to this matter. The same is not true when, like in the case of Ms. Hill, there was clear notice that she would be called. In that case, it is no longer "unlikely" she will be called; rather, she knows that, even if there are others with similar testimony, she *will* be called. Accordingly, under the facts of this case, the Court does not find an analysis of corroborative testimony necessary under the Model Code.

In this case, Haile listed Ms. Hill on her witness list on December 17, 2019.[50] Haile also included Ms. Hill on her amended witness list two weeks later on January 3, 2020.[51] At that time, trial was scheduled for March 16, 2020.[52] The trial was later rescheduled, but at the time the lists were filed, trial was imminent. Plaintiffs did not object to Ms. Hill's inclusion on the witness list at that time. Ms. Hill's inclusion on those lists three months before trial shows she was a likely witness for Haile. Ms. Hill also was a material witness because, as explained above, she would testify as to matters concerning Haile's intent, a contested issue in the case, and her testimony could have an impact on the jury. The parties dispute the extent to which Haile gained an understanding of fair housing principles from her interactions with Ms. Hill, so the subject of Ms. Hill's testimony in particular also is contested.[53] When Ms. Hill accepted employment from the Treeces on July 8, 2021—eighteen months after she was listed as a witness for Haile—she was on notice that she would likely be a material witness in this case for Haile. Nothing about the relevant claims against Haile had changed in that time to cause the parties to think that Haile would no longer call Ms. Hill. Thus, on its face, Ms. Hill's accepting employment violated Disciplinary Rule 5-101(B) of the Model Code.

However, there are four exceptions to this general rule when a lawyer may accept employment even though the lawyer is likely to be a material witness in the same matter. Of these exceptions, only the fourth is at issue in this case: whether refusal would work a substantial hardship on the client. The Model Code provides several factors to consider when determining if there will be a substantial hardship on the client: "the personal or

---

[50] R. Doc. 181 at 4.
[51] R. Doc. 196 at 4.
[52] R. Doc. 199 at 5.
[53] *See* R. Doc. 390; R. Doc. 393.

financial sacrifice of the client that may result from [the lawyer's] refusal of employment or withdrawal therefrom, the materiality of [the lawyer's] testimony, and the effectiveness of [the lawyer's] representation in view of [the lawyer's] personal involvement."[54] "Where the question arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate."[55] Additionally, the Model Rules, which contain the same substantial hardship exception in Rule 3.7(a)(3), provide further guidance:

> [The substantial hardship exception] recognizes that a balancing is required between the interests of the client and those of the tribunal and the opposing party. Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness.[56]

Taking these factors into consideration, disqualifying Ms. Hill does not impose a substantial hardship on the Treeces. Ms. Hill has been their counsel only for roughly two months. This is not a situation in which a lawyer has spent years on a case and developed a mastery of its facts. In fact, the Treeces are represented by their original attorney from 2017, Mr. Adcock. Thus, replacing Ms. Hill will not greatly hurt them by disqualifying a longtime participant in their representation. Moreover, LaFHAC has other lawyers who can represent the Treeces. Defendants point to the new LaFHAC legal director Ms. Sarah Carthen Watson, for example. While the Treeces argue Ms. Carthen Watson is not yet admitted to the Louisiana bar, attorneys can be admitted before this Court *pro hac vice*.[57]

---

[54] Model Code of Pro. Resp. EC 5-10.
[55] *Id.*
[56] Model Rules of Pro. Resp. r. 3.7 cmt. 4.
[57] LR 83.2.5.

It also is relevant that both parties "could reasonably foresee that [Ms. Hill] would probably be a witness" when she enrolled as counsel because she had been listed as a witness for Haile for eighteen months prior.[58] Ms. Hill's foreseeable disqualification makes a hardship less likely.

The Treeces argue that disqualifying Ms. Hill would deprive them of the counsel of an experienced fair housing trial attorney. Ms. Hill has been practicing for sixteen years.[59] However, as stated, the Treeces still are represented by their longtime attorney Mr. Adcock, who has been practicing fifteen years, a marginal difference compared to Ms. Hill's experience.[60] Mr. Adcock has adequately represented the Treeces since the beginning. While several LaFHAC attorneys have recently withdrawn from representing the Treeces, as explained, there are other LaFHAC attorneys who can assist in their representation, who, if they join the case now, will have just about as much experience with the case at trial as Ms. Hill would have had. Moreover, disqualification affects only the attorney's role *at trial*; the disqualified attorney may still consult with other counsel, assist with trial preparation, prepare documents, research legal issues, handle pretrial negotiations, speak at settlement conferences, and appear at certain pretrial hearings.[61] Ms. Hill will be able to use her experience advocating for fair housing to assist in preparing for trial. Thus, there is not a substantial hardship on the Treeces in the disqualification of Ms. Hill.

On the other hand, the risk of confusion for the jury and prejudice to Haile is high if Ms. Hill acts as counsel and a witness. As explained, Ms. Hill will be testifying as to a

---

[58] *See* Model Rules of Pro. Resp. r. 3.7 cmt. 4.
[59] R. Doc. 390 at 8.
[60] R. Doc. 393 at 6.
[61] Douglas R. Richmond, *Lawyers as Witnesses*, 36 N.M. L. Rev. 47, 49-50 (2006); *see Jackson v. Adcock*, No. 03-3369, 2004 WL 1661199, at *4 (E.D. La. July 22, 2004).

contested issue, Haile's intent, and Ms. Hill's testimony itself, namely the extent of Haile's involvement and understanding of fair housing principles through her work with LaFHAC, is contested. The Treeces would likely be in the confusing position of having to impeach their own lawyer. Even if the Treeces chose not to impeach Ms. Hill because her testimony was relatively harmless to their case, it is likely in that event her testimony would nevertheless "conflict with that of [an]other witness[]," namely Haile, who will testify about the great effect her work with LaFHAC had on her.[62] In that situation, Ms. Hill's testimony has great potential to both confuse the jury and prejudice Haile. For these reasons, the potential for confusion to the jury and the prejudice to Haile outweigh any minor hardship the Treeces may experience because of Ms. Hill's disqualification.

Disciplinary Rule 5-102(B) of the Model Code also provides:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.[63]

However, Rule 5-102(B) only applies when a lawyer was first representing a client and later learned she might be called as a witness. As explained, Ms. Hill knew she would be called as a witness for eighteen months before she began representing the Treeces. For that reason, Rule 5-102(B) is inapplicable.[64]

For these reasons, the Model Code weighs in favor of disqualifying Ms. Hill.

---

[62] *See id.*

[63] Model Code of Pro. Resp. DR 5-102(B).

[64] Even if Rule 5-102(B) were applicable, Ms. Hill's testimony would be prejudicial to the Treeces. "Testimony is considered prejudicial under this Rule if it is so adverse to the client's side that the bar or the client might have an interest in discrediting the testimony." *Horaist*, 255 F.3d at 267 (quoting *Smith v. New Orleans Fed. Sav. & Loan Ass'n*, 474 F. Supp. 742, 749-50 (E.D. La. 1979)). As explained, the parties dispute the extent to which Haile gained an understanding of fair housing principles from her time working with LaFHAC. *See* R. Doc. 390; R. Doc. 393. Because the Treeces would likely seek to discredit Ms. Hill's testimony, her testimony would be prejudicial to the Treeces. Accordingly, Ms. Hill would not be able to continue representation under Rule 5-102(B).

### III.  Appearance of Impropriety

While "the relevant local and national ethical canons provide a useful guide for adjudicating motions to disqualify, they are not controlling."[65] Courts have also disqualified counsel "where public confidence in the legal system may be jeopardized by an attorney serving in the dual role of advocate and witness."[66] The "appearance of impropriety" doctrine reflects the notion "that some conduct which is in fact ethical may appear to the layman as unethical and thereby could erode public confidence in the judicial system or the legal profession."[67] "It does not follow, however, that an attorney's conduct must be governed by standards which can be imputed only to the most cynical members of the public."[68] Rather, there must be a "reasonably possibility that some identifiable impropriety actually occurred."[69]

In addition, "the disqualification rule requires a balancing of the likelihood of public suspicion against a party's right to counsel of choice."[70] In order to disqualify an attorney under the appearance of impropriety doctrine, "a court must . . . find that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case."[71] "A disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of his choosing."[72] Therefore, "[a]ll of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous

---

[65] *U.S. Fire Ins. Co.*, 50 F.3d at 1314.
[66] *Id.* at 1315.
[67] *Woods v. Covington Cnty. Bank*, 537 F.2d 804, 813 (5th Cir. 1976).
[68] *Id.*
[69] *U.S. Fire Ins. Co.*, 50 F.3d at 1316; *see also Woods*, 537 F.2d at 813.
[70] *U.S. Fire Ins. Co.*, 50 F.3d at 1316.
[71] *Woods*, 537 F.2d at 813 n.12.
[72] *U.S. Fire Ins. Co.*, 50 F.3d at 1316.

deference to the litigant's rights."[73] Courts thus consider whether an attorney's participation in the case "has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case."[74]

In this case, there is a serious concern that it may appear the Treeces hired Ms. Hill to prevent her from testifying against them. Ms. Hill had been listed as a witness for Haile for eighteen months prior to her enrolling as counsel in this case. This litigation has been ongoing for nearly four years. Throughout the duration of this case, Ms. Hill has been the executive director of LaFHAC, and she could have enrolled as counsel for the Treeces when the case was filed but did not do so. Then suddenly, a few months before trial, the Treeces enrolled Ms. Hill as their counsel. When moving to substitute Ms. Hill as counsel, the Treeces did not disclose to the Court that Ms. Hill had been listed as a witness for Haile for eighteen months.[75] To a reasonable layperson, the particular facts of this case may show lawyers and clients abusing the judicial system to deprive the opposing party of her witness. To put it simply, Ms. Hill was a witness first. To the general public, this is a matter of fairness.

It is significant that the Court found no cases in its research that match this fact pattern, in which an attorney long listed as a witness enrolls as counsel shortly before trial. The vast majority of disqualification cases involve one party moving to disqualify the longtime attorney of the other side when it later becomes apparent that the attorney will be a witness. This dearth of cases is likely because lawyers who are listed as witnesses do

---

[73] *Id.* at 1314.

[74] *Id.* (quoting *In re Dresser Indus., Inc.*, 972 F.2d 540, 544 (5th Cir. 1992))

[75] R. Doc. 382.

not attempt to enroll as counsel because they heed the various ethical prohibitions against doing so. Indeed, the Model Rules note that "[e]very lawyer is responsible for observance of the Rules of Professional Conduct,"[76] including the rule that a "lawyer *shall not* act as advocate at a trial in which the lawyer is likely to be a necessary witness."[77] The Louisiana State Bar Association has instructed "that a lawyer should seek to avoid *undertaking* . . . representation in any matter in which it becomes clear that the lawyer is likely to be called as a witness at trial."[78] The Model Code similarly instructs that a "lawyer shall not *accept* employment in contemplated or pending litigation if he knows or it is obvious that he . . . ought to be called as a witness"[79] and requires the lawyers to make a "decision" based on "considerations" under the rule before accepting employment.[80]

The unique facts of this case diminish the possibility that the Defendants are merely harassing the Treeces and attempting to deprive them of their counsel of choice. Defendants are not attempting to disqualify the Treeces' longtime attorney on the eve of trial, as happened in *In re Andry*.[81] In that case, this Court refused to disqualify counsel two months before trial when he had been enrolled for five years and was a known potential witness all that time.[82] In this case, it is the reverse. Defendants seek to disqualify Ms. Hill who has been listed as a witness for months and enrolled as counsel for the Treeces on the eve of trial. Defendants' motion is not harassment but a legitimate attempt to protect Haile's right to call a witness who is a key element of Haile's defense.

---

[76] Model Rules of Pro. Resp. pmbl. ¶ 12.
[77] *Id.* r. 3.7(a) (emphasis added).
[78] La. State Bar Ass'n Rules of Pro. Conduct Comm., Public Op. 05-RPCC-007, at 1 (2005) (emphasis added).
[79] Model Code of Pro. Resp. DR 5-101(B) (emphasis added).
[80] *Id.* EC 5-10.
[81] *In re Andry*, No. 15-2478, 2020 WL 5982898 (E.D. La. Oct. 8, 2020).
[82] *Id.* at *15.

The Court is mindful of the Treeces' right to their counsel of choosing. This right is one that cannot be deprived cavalierly.[83] However, for the nearly four years this case has been ongoing, the Treeces did not enroll Ms. Hill. They chose Mr. Adcock, Mr. Theis, and Ms. Owen, all while Ms. Hill was readily available. Instead, Haile chose Ms. Hill as a witness. The Treeces did not object to Ms. Hill's inclusion on the witness list for the eighteen months before they hired her. The Treeces cannot now enroll Ms. Hill as their attorney on the eve of trial. The Court's decision is guided by the belief that disqualifying Ms. Hill will not impose a significant hardship on the Treeces, as explained above. The Treeces still have their longtime attorney Mr. Adcock, who has represented them from the start of this case. There are other attorneys at LaFHAC who may represent the Treeces, and Ms. Hill can still help prepare for the trial.

For these reasons, the Court finds the significant risk of an appearance of impropriety in this case outweighs the Treeces' interest in the counsel of their choosing. Accordingly, the appearance of impropriety weighs in favor of disqualifying Ms. Hill.

## **CONCLUSION**

Considering the competing standards for disqualification, the American Bar Association's Model Code of Professional Responsibility and the significant risk of an appearance of impropriety heavily weigh in favor of disqualification and outweigh other ethical and social interests at stake. Accordingly, the Court finds disqualification warranted.

---

[83] *U.S. Fire Ins. Co.*, 50 F.3d at 1316.

**IT IS ORDERED**, for the foregoing reasons, that Defendants' motion to disqualify Cashauna Hill as counsel to Plaintiffs Dwayne and Phallon Treece, is **GRANTED**.

**New Orleans, Louisiana, this 9th day of September, 2021.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**